**William Kenneth PARISH, Appellant,**

v.

**C. C. PEYTON, Superintendent of the Virginia State Penitentiary, Appellee.**

**No. 11661.**

United States Court of Appeals
Fourth Circuit.

Argued Jan. 7, 1969.

Decided March 19, 1969.

G. W. Shadoan, Washington, D. C. (Court-appointed counsel), for appellant.

Gerald L. Baliles, Asst. U. S. Atty. of Virginia (Robert Y. Button, Atty. Gen. of Virginia, and Reno S. Harp, III, Asst. Atty. Gen. of Virginia, on brief), for appellee.

Before SOBELOFF, BRYAN and BUTZNER, Circuit Judges.

SOBELOFF, Circuit Judge:

The District Court denied the petition of William Kenneth Parish, a Virginia prisoner, for a writ of habeas corpus, and he appeals. His petition raised a number of contentions including a search and seizure question which the District Court decided against Parish solely on the basis of its conclusion that he lacked standing to raise the point. This court, being of the opinion that the standing question was substantial, ordered oral argument on that issue and on the merits of Parish's Fourteenth Amendment claim. We affirm,[1] but find it unnecessary to decide the standing question. In our view, relief must be denied because the challenged police action was reasonable.

Parish's original trial was held in the state court on March 12, 1964. He was convicted of aiding and abetting the concealment of stolen property in violation of § 18.1–107 of the Code of Virginia, and was sentenced to serve a term of six years in the state penitentiary. The Virginia Supreme Court of Appeals affirmed, Parish v. Commonwealth, 206 Va. 627, 145 S.E.2d 192 (1965), and the Supreme Court of the United States denied certiorari, Parish v. Virginia, 384 U.S. 942, 86 S.Ct. 1463, 16 L.Ed.2d 540 (1966).

On June 17, 1966, Parish petitioned the Corporation Court of the City of Charlottesville for a writ of habeas corpus. This was denied on September 20, 1966 after a plenary hearing, and the Virginia appellate court denied him a writ of error.

Having exhausted available state remedies, Parish turned to the federal court. The United States District Court for the Western District of Virginia, at Charlottesville, denied his petition on June 16, 1967, and he appeals.

I

The record discloses that in November, 1962, a number of men's suits were stolen from Ed Michtom's, a retail store in Charlottesville, Virginia, and transported to Youngstown, Ohio, by bus in a cardboard box and a duffel bag. The Youngstown police took possession of the box and bag without a warrant under circumstances detailed below. Later they obtained warrants to search these packages, and the search conducted pursuant to the warrants yielded clothing which was used in evidence against the defendant at his trial. The introduction of this evidence became the basis of the present appeal.

According to the prosecution's testimony, Parish and Pasquale Pasanello were seen in Michtom's under suspicious circumstances at about the time the suits were allegedly stolen. Shortly thereafter, on November 30, the two men were seen together at the Virginia Trailways Bus Company's station at Lynchburg, Virginia, where they shipped a cardboard box to Youngstown with an instruction on the box reading merely "Allan Lee to Allan Lee c/o Buxton," with no indication of the sender's or the addressee's street addresses. The same day Pasanello alone was seen at the Charlottesville terminal, some miles distant from Lynchburg. There he shipped a duffel bag to Youngstown; the state made no attempt to prove that Parish was present on this occasion. The only marking the duffel bag bore was "William Lewis to William Moore," again with nothing to indicate where either the sender or the intended receiver could be located.

In Youngstown, a few days later, a police officer observed Ralph Gaudio, a man known to him as a dealer in stolen goods, conversing with Richard J. Baughman, a baggage agent at the bus terminal. After Gaudio's departure, the officer inquired of Baughman as to the purpose of Gaudio's visit and Baughman

---

1. We affirm the District Court in respect to the other grounds asserted by the petitioner for the reasons stated in the court's *Opinion and Judgment of June 16, 1967*.

advised him that Gaudio had represented himself to be William Moore and expressed interest in shipments expected from Virginia, in particular a duffel bag and large cardboard box consigned to Allan Lee or to William Moore. The officer thereupon requested Baughman to hold the packages upon their arrival and to notify the police immediately.

A cab driver also made inquiries about the packages. It appears that on one occasion he was accompanied by Gaudio, and on another the cab driver was alone. The cab driver supplied the dispatcher a phone number where he could be reached, and left instructions that he should be notified when the parcels arrived.

Several days later, when the shipments arrived in Youngstown, Baughman promptly notified the police in compliance with the officer's request. Two nighttime detectives secreted themselves in the bus station, awaiting the arrival of the cab driver or Gaudio. After waiting for about three hours without result, the detectives took the packages to the police station to assure that the packages would not be claimed and removed. The police did not then open either package, but testimony showed that the cardboard box had been damaged in transit and that suits inside it were plainly visible.

The next day, the police obtained warrants authorizing search of the two parcels. The clothing which the search produced was traced by the labels to Ed Michtom's in Charlottesville.

## II

■■ Parish contends, and we agree, that taking the parcels to the police station was a "seizure" by the state officers, the legality of which must be tested under applicable constitutional standards. His argument is that the "seizure" was unreasonable because made without probable cause and that the seizure taints the search, irrespective of the validity of the subsequent search warrants. We reject the contention, because there was ample basis in reason for the officers' conduct in this instance. They were aware that a man well-known to them as a dealer in stolen goods, particularly clothing, had misrepresented his name while inquiring about the goods. From the tear in the carton, they could see that it contained clothing. Neither package had a return address or forwarding address. While singly any of these circumstances might not have been sufficient to constitute probable cause, together they could well lead a man of reasonable caution to believe the contents were stolen. Furthermore, the officers acted reasonably in awaiting the receiver for several hours before moving the packages to headquarters for safekeeping with a view to a later search under the authority of duly issued warrants.

■ Parish next contends that even if there was probable cause for the seizure it nonetheless violated his constitutional rights because the detectives who took possession of the parcels had not obtained a warrant authorizing this action. Parish relies on the warrant requirement of the Fourth Amendment, as applied to the states by the Fourteenth, but this case falls within the narrow exception to the general rule stated in Terry v. Ohio, 392 U. S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889. There, the Court reiterated that "the police must, whenever practicable, obtain advance judicial approval of searches and seizures through the warrant procedure * * * [and] in most instances failure to comply with the warrant requirement can only be excused by exigent circumstances." We are of the opinion that the requisite exigency existed here.

A warrantless search of a motor vehicle was upheld in Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543, 39 A.L.R. 790, as based upon probable cause. The underlying rationale of the Court's holding was that there was

a necessary difference between a search of a store, dwelling house, or other structure in respect of which

a proper official warrant readily may be obtained and a search of a ship, motor boat, wagon, or automobile for contraband goods, where it is not practicable to secure a warrant, because the vehicle *can be quickly moved out of the locality or jurisdiction in which the warrant must be sought.* (Emphasis added.) *Id.* at 153, 45 S.Ct. at 285.

The Court adhered to its holding in a case where a reliable informer had notified the police that a car in a particular location contained intoxicating liquor. Husty v. United States, 282 U.S. 694, 51 S.Ct. 240, 75 L.Ed. 629, 74 A.L.R. 1407. The officers found the car unattended at the indicated spot. Later, the petitioners entered the car, and the officers confronted them and searched the car. In upholding the warrantless search, the Court said:

> The search was not unreasonable, because, as petitioners argue, sufficient time elapsed between the receipt by the officer of the information and the search of the car to have enabled him to procure a search warrant. He could not know when Husty would come to the car or how soon it would be removed. In such circumstances, we do not think the officers should be required to speculate upon the chances of successfully carrying out the search, after the delay and withdrawal from the scene of one or more officers which would have been necessary to procure a warrant. *Id.* at 701, 51 S.Ct. at 242.

*Carroll* and *Husty* turn upon the mobile quality of motor vehicles, and we fail to discern a distinction of significance between the vehicles in those cases and the parcels here. Just as the liquor in *Carroll* and *Husty* might have disappeared if the officers had not acted on the spot, so here the police could reasonably have believed that the duffel bag and the carton might be claimed by the thieves or their collaborators and removed beyond retrieval. In response to the obvious necessity for swift action,[2] they proceeded without a warrant, but limited themselves to securing possession of the articles. Exercising restraint, they deferred the search till after they had obtained search warrants from a magistrate.

### III

Appellant also attacks the search warrants themselves, asserting that the issuing magistrate acted upon affidavits which did not show probable cause. The affidavits contained the following statement:

> No street address listed by sender or receiver and person who called for said duffel bag (box) at Greyhound Terminal, Youngstown, Ohio, is suspected dealer in stolen goods and his true name is not listed on said duffel bag (box).

It is our view that the recited facts furnished a sufficient independent ground for the issuance of the warrant, but here probable cause for the warrant rests on a broader basis: the testimony at the state hearing showed that the magistrate who authorized the search viewed the parcels and, like the others, was able to see articles of clothing in the cardboard box. Certainly, he could consider this in deciding whether to authorize the search. His independent observation and the affidavits together show abundant ground for a responsible person to believe that a search of the parcels would disclose stolen clothing. We hold that the search was pursuant to a valid search warrant.

Accordingly, the order of the District Court denying the petition for a writ of habeas corpus will be

Affirmed.

2. *See* Warden v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782; Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908.