**STATE of North Dakota, Plaintiff and Appellee,**

v.

**David MATTHEWS, Defendant and Appellant.**

**Cr. No. 450.**

Supreme Court of North Dakota.

Jan. 31, 1974.

Rehearing Denied March 27, 1974.

Charles J. Gilje, State's Atty., Jamestown, for plaintiff and appellee State of North Dakota.

Benny A. Graff, Carrington, for defendant and appellant.

VOGEL, Judge.

The defendant was convicted of the crime of possession of marijuana, and asserts that his conviction was based upon a violation of the search-and-seizure provisions of the Fourth Amendment of the United States Constitution, which provides:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

Section 18 of the Constitution of North Dakota is substantially the same.

There is no dispute as to the material facts, but we set them forth because they are important to a disposition of the case.

On January 17 or 18, 1973, a special agent of the North Dakota Bureau of Criminal Identification learned that two packages containing marijuana were being sent from Phoenix, Arizona, to Jamestown, North Dakota, to two unidentified persons by a Greg Anderson. He notified the Jamestown police department, which, in turn, notified him on January 23 that one of the packages had arrived at the bus depot in Jamestown at 9 a. m. of that day. [This is the package involved in State v. Long, 216 N.W.2d 109 (N.D.1973), decided today. The facts of both cases will be briefly stated in this opinion.] The first package (hereinafter, the Long package) was addressed to a Gayle Johnson and was picked up by Long at 7:30 p. m. on the 23d. The second package (hereinafter, the Matthews package) arrived at 9:30 p. m. on the 23d, was addressed to a Gaylon Baker, and was picked up by Matthews at 7:30 p. m. on January 24.

Thus the Long package was in the possession of the bus company for about 10½ hours before it was picked up, and the Matthews package was in the possession of the bus company for approximately 22 hours before it was picked up. The Jamestown police department was promptly notified of the arrival of each package, and officers were sent to conduct a surveillance of the bus depot. During the surveillance, which was participated in by Jamestown police officers and representatives of the Bureau of Criminal Identification, the Jamestown police department caused the Long package to be opened and the contents examined, and found that the contents included marijuana, and a Bureau of Criminal Identification representative directed the Matthews package to be opened by the bus company agent. The contents were identified as marijuana. In both cases the packages were then resealed and the surveillance continued until the packages were picked up and arrests made.

No search warrants were obtained at any time, although there was ample time to obtain them.

Furthermore, representatives of both the Bureau of Criminal Identification and the bus company testified that they had agreed that the packages would not be delivered unless an officer were present, so additional time was available if necessary.

The addresses on both packages were fictitious, and the addresses may or may not have been existing persons. In the case of the Matthews package, a telephone call was made to the addressee, Gaylon Baker, and the person answering the telephone stated that the package would be picked up the next day, as it was. We do not deem the use of a fictitious name, if it was fictitious, as significant to the outcome of these cases. See Williams v. State, 501 P.2d 841 (Okl.Cr.1972).

Matthews signed a receipt for the Matthews package, using his own name rather than the name of the person to whom the package was addressed. He was arrested with the package in his possession.

He made a motion to suppress prior to trial. The court denied the motion and found him guilty after a trial to the court, a jury having been waived.

■ It is true, as the dissent points out, that no transcript of the oral argument on the motion to suppress was included in the record submitted to us. It is not known whether the argument was reported by a court reporter. Nor does it matter, in our view. There is no indication that any evidence was offered at the hearing, or that the argument was any different from the legal argument made before us.

There was no disagreement between the State and the defendant as to the facts of the case. All issues were briefed and argued before us, and we believe that the result would be the same if we dismissed subject to correction of the irregularity, following which the dismissal would be canceled and the case reargued. Secs. 29–28–20, 29–28–21, and 29–28–26, N.D.C.C. Since all necessary facts are before us, we will deal with the merits.

We are faced with two questions of constitutional law:

1. Whether the defendant has "standing" to question and challenge the legality of the search of the package; and

2. If the answer to the first question is affirmative, whether the search was constitutionally permissible.

Before going into the question of standing, we sum up the fact situation before us in terms that have been considered important and sometimes determinative in decisions of the Supreme Court of the United States and of this court and other appellate courts: (1) the charge is one involving possession as an element of the crime; (2) the search was made in the absence of the defendant, (3) of a sealed package, (4) not on premises controlled by him; (5) the search was made without a warrant, although (6) there was ample time to obtain a warrant; and (7) the search was made prior to the time of the arrest of the defendant and prior to the date of his alleged possession of the evidence or contraband.

## STANDING

A discussion of standing to challenge a search can best begin with Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed. 2d 697 (1960), cited by both parties here. In *Jones*, the court recognized the ancient dilemma of a defendant who makes a motion to suppress in order to have standing to challenge the admissibility of evidence; he is required to claim ownership or possessory interest by testimony at a hearing on his motion to suppress, while realizing that his testimony to establish his right to make the claim of unconstitutionality may be used against him at the trial if his claim is denied. The United States Supreme Court held that the dilemma was not inescapable, and that standing must be allowed to the defendant under the facts of that case. Two alternative bases for so holding were stated:

"(1) The same element in this prosecution which has caused a dilemma, i. e., that possession both convicts and confers standing, eliminates any necessity for a preliminary showing of an interest in the premises searched or the property seized, which ordinarily is required when standing is challenged. (2) Even were this not a prosecution turning on illicit possession, the legally requisite interest in the premises was here satisfied, for it need not be as extensive a property interest as was required by the courts below." 362 U.S., at 263, 80 S.Ct. at 732.

While the facts in *Jones* were not entirely similar to those we are considering here (among other things, the search was made in his presence in an apartment belonging

to a friend who had permitted him to use it), we have quoted from it at length because many subsequent cases refer to one or the other of the two alternative grounds for giving the defendant standing in *Jones*.

In Mancusi v. DeForte, 392 U.S. 364, 88 S.Ct. 2120, 20 L.Ed.2d 1154 (1968), the court stated that in *Jones, supra*, it "explicitly did away with the requirement that to establish standing one must show legal possession or ownership of the searched premises." 392 U.S., at 369, 88 S.Ct., at 2124.

In *Mancusi*, although the defendant was personally present when the warrantless search was made, we believe the court attached no particular significance to that fact. What is significant to us is that the records in question (which were seized from an office DeForte shared with others) were seized prior to his arrest and were used against him at the trial, over his objection, just as the package in question here was seized before the arrest of Matthews and used against him at the trial. The court held that the search of DeForte's office was unreasonable within the meaning of the Fourth Amendment, and that he had standing to assert the unconstitutionality of the search.

Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), was a bank robbery case, not a "possessory" crime, but otherwise the elements we mentioned above were all present. In *Simmons* a suitcase belonging to one Garrett was seized from the basement of a house in which he did not reside. There was a conflict of testimony as to whether the consent of the owner of the house to make the search was given. The court held, after specific reference to the holding of Jones v. United States, *supra*, that when one in the position of Garrett testifies in support of a motion to suppress on Fourth Amendment grounds his testimony cannot be used against him at the trial. Thus the dilemma described in *Jones* was avoided by making the testimony at the suppression hearing inadmissible. From this specific holding

the State here argues that the defendant *must* raise the question of illegality of the search at the pretrial level by testifying to a claim of ownership at a suppression hearing and that the defendant here did not do so, so has no standing. But this argument fails for two reasons:

First, *Simmons* recognizes that the *Jones* rule is based upon alternative grounds, and the charge in *Simmons* is of a nonpossessory crime and is not intended to make any new rule as to the other alternative ground in *Jones*, which applies to possessory charges such as we have here. The court in *Simmons* held that "when, as in *Jones*, possession of the seized evidence is itself an essential element of the offense with which the defendant is charged, the Government is precluded from denying that the defendant has the requisite possessory interest to challenge the admission of the evidence." 390 U.S., at 390, 88 S.Ct., at 974. It then went on to discuss the alternative ground, which applied to situations such as *Simmons*, where the charge is not a possessory one.

■ Second, the argument of the State here disregards our procedure permitting motions to suppress during trial, similar to provisions of Rule 41(e), Federal Rules of Criminal Procedure, recognizing the right of the court to hear motions to suppress during a trial. Of course, neither the Federal Rules of Criminal Procedure nor our recently adopted North Dakota Rules of Criminal Procedure applied to the trial of this case, which occurred prior to the effective date of our North Dakota Rules of Criminal Procedure, but our law has always recognized the right of a defendant to make a motion to suppress during a trial. See State v. Howe, 182 N.W.2d 658 (N.D.1970), cert. denied sub nom., Howe v. North Dakota, 403 U.S. 933, 91 S.Ct. 2261, 29 L.Ed.2d 712 (1971).

■ The State places greatest emphasis upon the recent decision in Brown v. United States, 411 U.S. 223, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973). In *Brown*, a convic-

tion was affirmed after a search, challenged as unconstitutional, had been sustained. Stolen merchandise was taken from the possession of a man named Knuckles, while the petitioners were in jail in a different State. The charges were transportation of stolen goods and a conspiracy to transport stolen goods, in which possession is an essential element of the offenses charged. Unlike the situation with which we are confronted, the petitioners were arrested before the challenged search and seizure took place. At a pretrial suppression hearing, the petitioners did not assert a possessory interest in the goods in the possession of Knuckles, although under the rule of *Simmons, supra,* they could have done so and could have had their testimony excluded at a subsequent trial.

The Supreme Court went on to say:

"But it is not necessary for us now to determine whether our decision in Simmons, supra, makes Jones 'automatic' standing unnecessary. We reserve that question for a case where possession at the time of the contested search and seizure is 'an essential element of the offense charged.' Simmons, supra, 390 U. S. at 390, 88 S.Ct. [967], at 974 [19 L. Ed.2d 1247]. Here, unlike Jones, the government's case against petitioners does not depend on petitioners' possession of the seized evidence at the time of the contested search and seizure. The stolen goods seized had been transported and 'sold' by petitioners to Knuckles approximately two months before the challenged search. The conspiracy and transportation alleged by the indictment were carefully limited to the period before the day of the search.

"In deciding this case, therefore, it is sufficient to hold that there is no standing to contest a search and seizure where, as here, the defendants: (a) were not on the premises at the time of the contested search and seizure; (b) had no proprietary or possessory interest in the premises; and (c) were not charged with an offense that includes, as an essential element of the offense charged, possession of the seized evidence at the time of the contested search and seizure. The vice of allowing the government to allege possession as part of the crime charged, and yet deny that there was possession sufficient for standing purposes, is not present. The government cannot be accused of taking 'advantage of contradictory positions.' Jones v. United States, supra, 362 U.S., at 263, 80 S.Ct. [725], at 732 [4 L.Ed.2d 697]. See United States v. Allsenberrie, 424 F.2d 1209, 1212–1214 (CA7 1970); United States v. Cowan, 396 F.2d 83–86 (CA2 1968); Niro v. United States, 388 F.2d 535, 537 (CA1 1968); United States v. Bozza, 365 F.2d 206, 223 (CA2 1966). Compare United States v. Price, 447 F. 2d 23, 29 (CA2 1971), cert. denied, 404 U.S. 912, 92 S.Ct. 232, 30 L.Ed.2d 186 (1971)." 411 U.S. 228, 93 S.Ct. 1569, 36 L.Ed.2d 213–214.

While repeated references to possession "at the time of the contested search and seizure" seem to imply, as the State argues, that seizure either before (as in our case) or after the alleged criminal possession (as in *Brown*) removes the "automatic standing" described in *Jones,* we do not believe this is true. To hold in this case that the State can, without a warrant, seize and open sealed packages, and use the evidence thereby obtained to convict a person who later picks up the package, would offend the Fourth Amendment as well as the North Dakota Constitution, Section 18. To deny standing to the defendant because he did not testify to a possessory interest and thereby acquire the immunity granted in *Simmons* is to substitute ritual for reality. We believe that the words "at the time of the contested search and seizure," used in *Brown,* are dictum as to cases where the warrantless seizure precedes the possession charged as part of the offense. There is a prosecutorial "advantage of contradictory position" in the State's position that it can compel Matthews to claim a right of possession on January 23, when the warrantless search was made, in order to have

standing to suppress evidence in a case charging him with possession 22 hours later. In the case of Long, the interval is even less—10½ hours.

Other decisions which, in general, support our decision as to standing include: Niro v. United States, 388 F.2d 535 CA1 1968); United States v. Willis, 473 F.2d 450 (CA6 1973), cert. denied, 412 U.S. 908, 93 S.Ct. 2290, 36 L.Ed.2d 974 (1973); United States v. Fields, 458 F.2d 1194 (CA3 1972), cert. denied, 412 U.S. 927, 93 S.Ct. 2755, 37 L.Ed.2d 154 (1972); United States v. Brown, 300 F.Supp. 1285 (D.C. N.H.1969); United States v. Cobb, 432 F. 2d 716 (CA4 1970); United States v. Allsenberrie, 424 F.2d 1209 (CA7 1970), and see Combs v. United States, 408 U.S. 224, 92 S.Ct. 2284, 33 L.Ed.2d 308 (1972).

■ We therefore hold that the appellant had standing to contest the constitutionality of the search and seizure in this case.

■ If Brown v. United States, *supra*, should be interpreted to apply to cases like this one, we would expect to follow our own precedents. It is within the power of this court to apply higher constitutional standards than are required of the States by the Federal Constitution. Lego v. Twomey, 404 U.S. 477, 489, 92 S.Ct. 619, 30 L. Ed.2d 618 (1972); State v. Taylor, 60 Wis.2d 506, 210 N.W.2d 873 (1973).

## CONSTITUTIONALITY OF THE SEARCH

We start with three basic premises:

■ One, as stated in State v. Gagnon, 207 N.W.2d 260, 263 (N.D.1973), "All searches made without a valid search warrant are unreasonable unless they are shown to come within one of the exceptions to the rule that a search must be made upon a valid search warrant. Stoner v. California, 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964)." To the same effect, Camara v. Municipal Court, 387 U.S. 523,

87 S.Ct. 1727, 18 L.Ed.2d 930 (1967), and Katz v. United States, 389 U.S. 347, 88 S. Ct. 507, 19 L.Ed.2d 576 (1967).

■ Two, where a violation of the Fourth Amendment provision as to search and seizure is asserted, the burden of proof on a motion to suppress is on the State. Vale v. Louisiana, 399 U.S. 30, 34, 90 S.Ct. 1969, 26 L.Ed.2d 409 (1970).

■ Three, ever since Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), evidence obtained by search and seizure violative of the Fourth Amendment is, by virtue of the Due Process Clause of the Fourteenth Amendment, inadmissible in State courts. State v. Manning, 134 N.W. 2d 91 (N.D.1965).

■ There are several generally recognized exceptions to the requirement of a valid search warrant prior to search and seizure. One is a search incidental to a lawful arrest [State v. Gagnon, *supra*], and another is a border search [State v. Gagnon, *supra*; Almeida-Sanchez v. United States, 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973)]. Obviously, neither of these applies here. A third exception arises when the search is consented to by an appropriate person. State v. Howe, *supra*. However, a search by an employee of a common carrier at the direction of a police officer is a police search, not a search within the authority, if any, of the employee of the common carrier. Corngold v. United States, 367 F.2d 1 (CA9 1966); Commonwealth v. Dembo, 451 Pa. 1, 301 A.2d 689 (1973); People v. McKinnon, 7 Cal.3d 899, 103 Cal.Rptr. 897, 500 P.2d 1097 (1972), cert. denied, 411 U.S. 931, 93 S.Ct. 1891, 36 L.Ed.2d 390 (1973); Williams v. State, 501 P.2d 841 (Okl.Cr.1972). It is clear that the "consent exception" does not apply in the instant case.

■ A fourth exception arises when the items of evidence or contraband are in "plain view" of officers legally in a position to see them. Coolidge v. New Hamp-

shire, 403 U.S. 443, 91 S.Ct. 2022, 29 L. Ed.2d 564 (1971), annot., 29 L.Ed.2d 1067. The "plain view" exception, however, does not apply to sealed packages the appearance of which is not indicative of their illicit contents. United States v. Sokolow, 450 F.2d 324 (CA5 1971); Stanley v. Georgia, 394 U.S. 557, 89 S.Ct. 1243, 22 L. Ed.2d 542 (1969) [concurring opinion of Stewart, Brennan, and White, JJ.]; People v. Marshall, 69 Cal.2d 51, 69 Cal.Rptr. 585, 442 P.2d 665 (1968). The "plain view" exception is not applicable.

■ The State seems to claim that a category of "exigent circumstances" constitutes a separate exception to the general rule that search warrants must be obtained prior to searches and seizures. The language of some decisions, such as State v. Jackson, 210 N.W.2d 537 (Iowa 1973), can be so read. However, we believe that the term "exigent circumstances" originated as a shorthand way of describing those facts which give rise to a previously accepted exception to the rule, and not as a new exception in itself. The term has been used in the shorthand sense in, among other decisions, Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L. Ed.2d 419 (1970), rehearing denied, 400 U.S. 856, 91 S.Ct. 23, 27 L.Ed.2d 94 (1970), and Roaden v. Kentucky, 413 U.S. 496, 93 S.Ct. 2796, 37 L.Ed.2d 757 (1973).

We conclude that "exigent circumstances" is not an exception to the requirement of a warrant, but is only a handy way of describing the circumstances which give rise to one or another of the generally recognized exceptions mentioned earlier.

The State here relies primarily upon a line of decisions holding that searches without a warrant are "reasonable" where there are exigent circumstances. The State candidly admits that all of the Federal cases it relies upon relate to searches of automobiles, but points to one California case, People v. McKinnon, *supra,* which, by analogy to the automobile cases, extended

the doctrine to a package in the hands of a common carrier. The decisions referred to by the State include Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543, 39 A.L.R. 790 (1925); Chambers v. Maroney, *supra*; Coolidge v. New Hampshire, *supra;* Cady v. Dombrowski, 413 U. S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973), and People v. McKinnon, *supra.*

The holding in *Carroll* is:

"We have made a somewhat extended reference to these statutes to show that the guaranty of freedom from unreasonable searches and seizures by the Fourth Amendment has been construed, practically since the beginning of the government, as recognizing a necessary difference between a search of a store, dwelling house, or other structure in respect of which a proper official warrant readily may be obtained and a search of a ship, motor boat, wagon, or automobile for contraband goods, where it is not practicable to secure a warrant, because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought.

"Having thus established that contraband goods concealed and illegally transported in an automobile or other vehicle may be searched for without a warrant, we come now to consider under what circumstances such search may be made. . . . [T]hose lawfully within the country, entitled to use the public highways, have a right to free passage without interruption or search unless there is known to a competent official, authorized to search, probable cause for believing that their vehicles are carrying contraband or illegal merchandise.

. . .

". . . The measure of legality of such a seizure is, therefore, that the seizing officer shall have reasonable or probable cause for believing that the automobile which he stops and seizes has contraband liquor therein which is

being illegally transported. . . ." 267 U.S., at 153–154 and 155–156, 45 S. Ct., at 285.

This exact language is quoted in Chambers v. Maroney, 399 U.S., at 48–49, 90 S. Ct. 1975.

In People v. McKinnon, *supra,* a majority of the court makes the argument the State makes here: that a package in the hands of a common carrier can be placed in the same category as an automobile, in that both can readily be moved, and therefore a warrantless search of a package in the possession of a common carrier can be justified under circumstances which would authorize a warrantless search of an automobile. However, with the exception of Parish v. Peyton, 408 F.2d 60 (CA4 1969), cert. denied, 395 U.S. 984, 89 S.Ct. 2148, 23 L.Ed.2d 772 (1969), this case seems to stand alone on this point. Further, we note that the exigencies of the situation were different in *McKinnon,* as the following excerpt from the opinion shows:

"Here, in sharp contrast, law enforcement authorities had not 'known for some time' of the existence or probable contents of the five cartons presented by defendants for shipment; although defendants were not deliberately fleeing, both were departing from the premises and one was already on board an airplane preparing to fly out of the jurisdiction; the cartons were not resting on private property, but had been consigned to a common carrier for transportation to a remote destination; and there was probable cause to believe . . . that the cartons were being 'used for an illegal purpose' in that they contained not 'mere evidence' but contraband. Each of these factors was specifically found to be lacking in *Coolidge*; measured by the high court's own standards, therefore, the opportunity to search in the case at bar was much more 'fleeting'— and prompt action was far more imperative—than in *Coolidge*." 103 Cal.Rptr., at 905, 500 P.2d, at 1105.

Although the State argues that the court, in *McKinnon,* held that the officer who examined the package after it was opened by the employee of the carrier had probable cause to examine the package, our reading of the decision is that it was constitutional for the common carrier to open the package for inspection, and, when the contents were visible, the officer had probable cause to examine the contents. As we understand the decision, California would hold that the search in our case was unconstitutional because the package was opened with the connivance of the police.

In Coolidge v. New Hampshire, *supra,* a search of an automobile at a station house after an arrest had been made, and while the vehicle was in close custody, was held unconstitutional, but in Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L. Ed.2d 1067 (1968), and in Cooper v. California, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed. 2d 730 (1967), warrantless searches of vehicles in the control of police were upheld.

In Cady v. Dombrowski, *supra,* upon which the State relies heavily, the Supreme Court recognizes the distinction "between motor vehicles and dwelling places" and concludes that "the type of caretaking 'search' conducted here of a vehicle that was neither in the custody nor on the premises of its owner, and that had been placed where it was by virtue of lawful police action, was not unreasonable solely because a warrant had not been obtained." And, "Where, as here, the trunk of an automobile, which the officer reasonably believed to contain a gun, was vulnerable to intrusion by vandals, we hold that the search was not 'unreasonable' within the meaning of the Fourth and Fourteenth Amendments."

There is nothing in the record before us to show, and much to show the absence of, any justification for a search based upon an "automobile exception" to the general requirement of a search warrant. The State has no right to make

"caretaking" searches of packages in bus depots, and no routine police procedure justifies a warrantless search of packages in bus depots.

Our own cases are consistent with the principles we have stated. In State v. Gagnon, *supra,* a warrantless search of an automobile was made and a contemporaneous arrest of the defendant was made. We held that the arrest was made without probable cause, but went on to say that, even assuming the validity of the arrest,

". . . in order to justify a search without warrant, there must be exigent circumstances, in addition to probable cause, which require immediate action. What were the exigent circumstances which would justify the search of the defendant's automobile after the defendant was in custody? He could not escape nor could he destroy any evidence that might have been in his automobile. There was no justification for not securing a warrant before the officers searched it. Further, a search without warrant incidental to a valid arrest must be confined to the person and the area within which the defendant might reach weapons or destroy the evidence. Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969)." 207 N. W.2d, at 264.

The State apparently recognizes that State v. Gagnon is contra to the rule it espouses, and it asks us to overrule State v. Gagnon on the authority of Cady v. Dombrowski. We decline to do so, convinced that they are not inconsistent.

■ We adhere to the unchanging interpretation by the Federal courts of the Fourth Amendment that:

"The constitutional difference between searches of and seizures from houses and similar structures and from vehicles stems both from the ambulatory character of the latter as well as from the fact that the extensive, and often noncriminal contact with automobiles will bring local officials in 'plain view' of evidence, fruits, or instrumentalities of a crime, or contraband." Cady v. Dombrowski, 413 U.S., at 442, 93 S.Ct., at 2528, 37 L.Ed.2d, at 715.

This distinction is clearly recognized in State v. Binns, 194 N.W.2d 756 (N.D. 1972). We adhere to it, and we decline to extend it further.

Since the "automobile exception" does not apply, we return to basic principles of search and seizure. As we said, in the absence of a recognized exception, all searches without warrant are presumed unconstitutional, and the burden is on the State to establish constitutionality.

As long ago as 1951, in United States v. Jeffers, 342 U.S. 48, 72 S.Ct. 93, 96 L.Ed. 59 (1951), the United States Supreme Court condemned a warrantless search of a hotel room not occupied by the defendant but used by him to store contraband, when the officers had obtained entry by the cooperation of the hotel management, in these terms:

"They [the renters of the room] were not even present when the entry, search and seizure were conducted; nor were exceptional circumstances present to justify the action of the officers. There was no question of violence, no movable vehicle was involved, nor was there an arrest or imminent destruction, removal, or concealment of the property intended to be seized. In fact, the officers admit they could have easily prevented any such destruction or removal by merely guarding the door. Instead, in entering the room and making the search for the sole purpose of seizing respondent's narcotics, the officers not only proceeded without a warrant or other legal authority, but their intrusion was conducted surreptitiously and by means denounced as criminal." 342 U.S., at 52, 72 S.Ct., at 95.

■ Although the State argues here that there were "exigent circumstances"

justifying the warrantless search, we find none. The package was under constant surveillance by the police, who had arranged with the common carrier to hold it in a nonpublic area until such time as it was called for while the police were present. There was no danger of destruction, removal, or concealment.

The fact that the package in question was located in a storage area in a bus depot is immaterial. As we said in State v. Howe, *supra,* quoting Katz v. . United States, 389 U.S. 347, 88 S.Ct. 507, 19 L. Ed.2d 576 (1967):

"For the Fourth Amendment protects people, not places. What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection. [Citations omitted.] But what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected." 389 U.S., at 351–352, 88 S.Ct., at 511.

The constitutional protection has been extended to the contents (marijuana) of a package shipped by air express and opened without a warrant by police who resealed it and later arrested the recipient [Morgan v. Kiff, 230 Ga. 277, 196 S.E.2d 445 (1973); Williams v. State, *supra*], to the contents of a locker in a bus terminal [United States v. Durkin, 335 F.Supp. 922 (S.D.N.Y.1971)], parcels in a locker in a subway station [United States v. Small, 297 F.Supp. 582 (D.C.Mass.1969)], to conversations in a glass-sided telephone booth [Katz v. United States, *supra*], to the contents of a suitcase in a friend's apartment [United States v. Brown, *supra*], and to contents of packages shipped through the United States mails [United States v. Van Leeuwen, 397 U.S. 249, 90 S.Ct. 1029, 25 L.Ed.2d 282 (1970)]. In the last case, the distinction was made between first-class mail such as letters and sealed packages subject to letter postage (the kind of package in question there) and newspapers,

magazines, pamphlets, and other printed matter, which may be inspected by postal authorities. The Court quotes Ex parte Jackson, 96 U.S. 727, 24 L.Ed. 877, decided in 1878:

"Letters and sealed packages of this kind in the mail are as fully guarded from examination and inspection, except as to their outward form and weight, as if they were retained by the parties forwarding them in their own domiciles. The constitutional guaranty of the right of the people to be secure in their papers against unreasonable searches and seizures extends to their papers, thus closed against inspection, wherever they may be. Whilst in the mail, they can only be opened and examined under like warrant, issued upon similar oath or affirmation, particularly describing the thing to be seized, as is required when papers are subjected to search in one's own household. No law of Congress can place in the hands of officials connected with the postal service any authority to invade the secrecy of letters and such sealed packages in the mail; and all regulations adopted as to mail matter of this kind must be in subordination to the great principle embodied in the fourth amendment of the Constitution." 96 U.S., at 733.

We discern no distinction between sealed packages subject to letter-rate postage, sealed packages shipped by air express [Morgan v. Kiff, *supra,* and Williams v. State, *supra*], and sealed packages being transported by a bus company. In all cases, the expectation of privacy is the same.

It is that "constitutionally protected reasonable expectation of privacy" which is determinative. Katz v. United States, *supra*; Mancusi v. DeForte, *supra*. We find that Matthews had such a reasonable expectation of privacy in the sealed package and that his expectation of privacy must be constitutionally protected.

■ It may be that the officers who made the warrantless search of the package in the Jamestown bus depot had probable cause to believe that a crime had been committed, but probable cause alone, without a search warrant or a simultaneous, valid arrest or other exigent circumstances, is insufficient to justify a warrantless search. Jones v. United States, 357 U.S. 493, 78 S.Ct. 1253, 2 L.Ed.2d 1514 (1958); Taylor v. United States, 286 U.S. 1, 52 S.Ct. 466, 76 L.Ed. 951 (1931). There was ample time to obtain a warrant; the package was, in effect, in the custody of the police, since they had made arrangements to hold it until they authorized delivery; and no other legitimate excuse for not obtaining a warrant is shown.

Since the charge was one involving possession of the goods seized, the defendant had standing to object to the search made in his absence.

The same court that decided Cady v. Dombrowski, *supra,* and at the same Term, in Almeida-Sanchez v. United States, *supra,* quoted Mr. Justice Jackson, soon after his return from the Nuremberg Trials:

" 'These [Fourth Amendment rights], I protest, are not mere second-class rights but belong in the catalog of indispensable freedoms. Among the deprivations of rights, none is so effective in cowing a population, crushing the spirit of the individual and putting terror in every heart. Uncontrolled search and seizure is one of the first and most effective weapons in the arsenal of every arbitrary government.' Brinegar v. United States, 338 U.S. 160, 180, 69 S. Ct. 1302, 1313, 93 L.Ed. 1879 (Jackson, J., dissenting)." 413 U.S., at 274, 93 S. Ct., at 2540, 37 L.Ed.2d, at 603.

■ It is of the very essence of our rights under the Fourth Amendment that the inferences to support the search "be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime." Johnson v. United States, 333 U.S. 10, at 13–14, 68 S.Ct. 367, 369, 92 L.Ed. 436.

When police assume the function of the magistrate, they act beyond the law and the evidence they obtain by so acting is excluded. In regrettable consequence, the guilty may go free, but the alternative— permitting warrantless rummaging through private .property—is worse. The remedy for both evils is for police to obey the law, not for the courts to ignore the Constitution.

The motion to suppress should have been granted. Admission of the evidence obtained by the unconstitutional search violated the defendant's constitutional rights. The judgment of conviction is reversed and the case is remanded for further proceedings consistent with this opinion.

ERICKSTAD, C. J., and PAULSON, J., specially concur.

TEIGEN and KNUDSON, JJ., dissent.

ERICKSTAD, Chief Justice (concurring specially).

I concur in the majority opinion; however, because of the nature of the dissent, I am compelled to respond thereto.

The dissent seems to be based upon an issue not raised by the parties and involves facts not in dispute. It is an obvious attempt to avoid a determination of the Fourth Amendment issue.

Notwithstanding the dissent's contention that the appeals must be dismissed because Matthews and Long failed to provide this court with the records upon which it may review the trial court's determination of the Fourth Amendment issue, the dissent proceeds to quote from the dissenting opinions of past and present justices of the United States Supreme Court who ·

have disapproved the exclusionary rule made applicable to the State by Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed. 2d 1081, 84 A.L.R.2d 933 (1961).

This is a unique approach and no doubt is encouraged by the dissent's belief that because of the change in the composition of the United States Supreme Court in recent years that court is about to reverse itself if and when a proper vehicle presents itself. If it is so that the Supreme Court is just waiting for the appropriate opportunity, it is surprising that it did not utilize United States v. Robinson, 218 U.S. 414, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973), reversing, 153 U.S.App.D.C. 114, 471 F.2d 1082 (1972), cert. granted, 410 U.S. 982, 93 S.Ct. 1500, 36 L.Ed.2d 177 (1973), a case decided by it on December 11 of last year, which involved the scope of a search incidental to an arrest.

Justices of the United States Supreme Court have certain privileges that justices of the appellate courts of the States do not have. One of those privileges and, indeed, obligations is to dissent from the majority opinion when it is believed that the majority opinion is in error. As justices of a State appellate court, however, we must adhere to the decisions of the majority of the United States Supreme Court on questions affecting the United States Constitution and citizens' rights thereunder. For that reason we cannot resort to dissenting opinions of justices of the United States Supreme Court as a basis for our opinion when majority opinions of the United States Supreme Court are to the contrary. The exclusionary rule was made applicable to the States in Mapp v. Ohio, *supra,* and until it is reversed by a majority of the Supreme Court of the United States, we are obligated to apply it. In the instant case we are talking about Fourth Amendment rights. Our obligation to apply constitutional law as the majority of the United States Supreme Court has stated it applies to all United States constitutional issues.

PAULSON, J., concurs.

TEIGEN, Judge (dissenting).

I dissent in both cases. These cases are parallel on the salient facts and the procedures followed in taking the appeals. This dissent, like the majority opinion, is made applicable in both cases. It is my opinion that these appeals should be dismissed because the appellants have failed to include in the record on appeal the relevant evidence upon which the rulings of the trial court, challenged on this appeal, are based.

It is fundamental that the party seeking review of an alleged error must see to it that the record is properly presented to the appellate court and that it is sufficient to show the alleged error, including all matters necessary for a consideration of the question presented for review. 4 Am.Jur. 2d, Appeal and Error, § 398.

Our rules of appellate procedure also place this burden upon the appellant. Rule 10(b) of the Rules of Appellate Procedure for the Supreme Court of North Dakota, in part, provides:

"If the appellant intends to urge on appeal that a finding or conclusion is unsupported by the evidence or is contrary to the evidence, he shall include in the record [on appeal] a transcript of all evidence relevant to such finding or conclusion."

And Rule 10(c), N.D.R.App.P., in part, provides:

"If no report of the evidence or proceedings at a hearing or trial was made, or if a transcript is unavailable, the appellant may prepare a statement of the evidence or proceedings from the best available means, including his recollection."

The Rules of Appellate Procedure for the Supreme Court of North Dakota were patterned after the Federal Rules of Appellate Procedure for the United States

Courts of Appeal and the above-quoted portion of the North Dakota rule is identical with the comparable federal rule. In speaking of Rule 10(b), Moore's Federal Practice, Second Edition, Vol. 9, at 1618, states that this rule places the burden of ordering and furnishing the necessary parts of the transcript squarely upon the appellant, as follows:

"This is so because of the familiar rule of appellate practice that the burden of showing error by reference to matters of record is upon the appellant. Unless the record that he brings before the court of appeals affirmatively shows the occurrence of the matters upon which he relies for relief, he may not urge those matters on appeal."

In the two cases under consideration here each of the parties, separately, noticed a pretrial motion to suppress the contraband. The record on appeal in each of these cases contains the motion, notice of motion and the order denying the motion. However, no transcript of the hearing on these respective motions was certified to this court and the evidence or proofs adduced thereat were not made a part of the record on appeal. During the trial in each of these cases, held several days after the motion to suppress was denied, the contraband was marked as exhibits and offered in evidence. Objections were made thereto, in the respective cases, as follows:

In the *Matthews* case:

"We are going to object, not on the basis of foundation, but on the basis of our previous motion to suppress the evidence in this case, and on the basis it was as a result of an illegal search and seizure and to maintain and keep that objection into the record."

And again:

"That is right, we waive any require-ment of foundation regarding those two items and we are again retaining our objection to the introduction of this Exhibit only on the basis of our previous motion to suppress."

And in the *Long* case:

"We object to this on the grounds we have previously stated in our motion [to suppress]."

And again:

"Same objection, your Honor, on the grounds it was obtained without a search warrant."

In each case the objections were overruled and the contraband was admitted in evidence.

It is clear from the transcripts, made a part of the record in these two appeals, and from the nature of the objections, the rulings of the trial court, and the colloquy of the attorneys at the trial that the objections were based entirely upon what transpired at the hearings on the respective motions to suppress and not upon evidence adduced at the trials. The records of these proceedings are not before us and we cannot judge on this review the correctness or incorrectness of the trial court's rulings on these motions.

Some of the facts may be gleaned from the transcripts of the records made at the two trials. They are clearly not complete. The evidenced adduced at the two trials obviously does not set forth the facts relied upon by the State or by the appellants on the motions to suppress. The evidence in each of these cases, presented at the respective trials, indicates that Mr. Hilde, the acting superintendent of the State Crime Bureau, had telephoned each of the two law enforcement officers involved in these arrests, advising that two packages, which he described as containing marijuana, had been sent from Arizona via Greyhound Bus to Jamestown, North Dakota, which packages were addressed to certain named persons with given addresses and showed a designated return address. As a

result the officers placed the Greyhound Bus Depot in Jamestown under surveillance. When the packages were called for and received by these respective appellants, at different times, the appellants were arrested, without a warrant, and the package in the possession of each was seized. Mr. Hilde, who had supplied the information to the arresting law enforcement officers, was not called to testify at either trial. However, it appears from the testimony of the arresting officers that under United States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965), they were entitled to rely upon the information furnished them by a fellow law enforcement officer—Mr. Hilde, the acting superintendent of the State Crime Bureau; that, therefore, they had probable cause under Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959), to arrest the respective appellants, without a warrant, when they were found to be in the possession of the packages containing the marijuana. These packages had been described to them by Mr. Hilde with enough particularity to allow identification on observation. Therefore, when the packages were seen and recognized in the possession of the appellants, who were carrying them away, exigent circumstances developed which constituted probable cause to make the arrest without a warrant and to search and seize the contraband as an incident to the arrest. United States v. Robinson, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973); Gustafson v. Florida, 414 U.S. 260, 94 S.Ct. 488, 38 L.Ed.2d 456 (1973).

Under these circumstances, which seem plausible from the evidence adduced at the trials, the investigation and search of the respective packages at the bus depot, while in the possession of the personnel of the bus company, were unnecessary under the law and, therefore, were surplus acts on the part of these officers and should not constitute a basis upon which to set these convictions aside, particularly in the absence of the record upon which the rulings of the trial court were made. *Ventresca* and *Draper* have not been overruled or eroded by subsequent decisions of the United States Supreme Court.

It is my opinion that these appeals should be dismissed because of the appellants' failure in their duty to provide this court with records upon which we may properly review the decisions of the trial court.

In respect to the appellants' challenge of the search of the packages at the bus depot, I agree with the holding of the Wisconsin Supreme Court in the very recent decision of State v. Christel, reported at 61 Wis.2d 143, 211 N.W.2d 801 (1973), and, on the basis of the reasoning of that decision, conclude that these appellants did not have standing to challenge the allegedly illegal search of the packages at the bus depot prior to delivery thereof to these appellants.

It is also my opinion that the Fourth Amendment to the United States Constitution does not support the exclusionary rule of evidence and that the common law rule in effect in this state since statehood, and until the exclusionary rule was forced upon us by Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), should be restored in an appropriate decision of the United States Supreme Court, freeing the states of the mandate of that case. In that connection I am in agreement with the statements made by several of the justices in their separate opinions in Coolidge v. New Hampshire. 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). I quote excerpts from some of these separate opinions in *Coolidge* with which I agree.

Mr. Justice Harlan, concurring, stated:

"From the several opinions that have been filed in this case it is apparent that the law of search and seizure is due for an overhauling. State and federal law enforcement officers and prosecutorial

authorities must find quite intolerable the present state of uncertainty, which extends even to such an everyday question as the circumstances under which police may enter a man's property to arrest him and seize a vehicle believed to have been used during the commission of a crime.

"I would begin this process of reevaluation by overruling Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), and Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963). The former of these cases made the federal 'exclusionary rule' applicable to the States. The latter forced the States to follow all the ins and outs of this Court's Fourth Amendment decisions, handed down in federal cases.

"In combination *Mapp* and *Ker* have been primarily responsible for bringing about serious distortions and incongruities in this field of constitutional law."

In a separate, dissenting-in-part and concurring-in-part opinion, Mr. Chief Justice Burger states:

"This case illustrates graphically the monstrous price we pay for the exclusionary rule in which we seem to have imprisoned ourselves."

And in Justice Black's concurring and dissenting opinion, he states, in part:

"The Fourth Amendment prohibits unreasonable searches and seizures. The Amendment says nothing about consequences. It certainly nowhere provides for the exclusion of evidence as the remedy for violation."

He then quotes from the Amendment, and comments:

"* * * No examination of that text can find an exclusionary rule by a mere process of construction. * * *

*     *     *     *     *     *

"* * * Evidence properly seized under the Fourth Amendment, of course, is admissible at trial. But nothing in the Fourth Amendment provides that evidence seized in violation of that Amendment must be excluded.

"* * * The majority treats the exclusionary rule as a judge-made rule of evidence designed and utilized to enforce the majority's own notions of proper police conduct. * * *

"I readily concede that there is much recent precedent for the majority's present announcement of yet another new set of police operating procedures. By invoking this rule-making power found not in the words but somewhere in the 'spirit' of the Fourth Amendment, the Court has expanded that Amendment beyond recognition. And each new step is justified as merely a logical extension of the step before.

"It is difficult for me to believe the Framers of the Bill of Rights intended that the police be required to prove a defendant's guilt in a 'little trial' before the issuance of a search warrant. But see Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). No such proceeding was required before or after the adoption of the Fourth Amendment, until this Court decided *Aguilar* and *Spinelli*."

Although I concur in these statements, they do not help in these cases.

It is my opinion in these cases that because the appellants have failed in their duty to provide the records on which we may properly review the decisions of the trial court, the appeals should be dismissed.

By additament the majority allude to the above dissent and speculate that no evidence was offered at the hearings on the motions to suppress in these cases. They conclude the result would be the same if "we dismissed subject to correction of the irregularity."

The rulings of the court at the trials were specifically based on its respective pretrial orders denying the respective pretrial motions to suppress and not on the evidence adduced at the trials. The orders denying the motions to suppress are intermediate orders, reviewable on the appeals from the judgments of conviction. Section 29–28–27, N.D.C.C. The majority have not reviewed the orders denying the motions to suppress. The majority opinion is based entirely on the evidence adduced at the trials, which was not intended by either party to constitute the grounds upon which the State or the defense relied in offering and resisting the introduction of the contraband in evidence as exhibits. I feel that the majority, not being desirous of dismissing the appeals for the reasons set forth in my dissent, should grant new trials under the power granted by Section 29–28–28, N.D.C.C., or. remand the respective cases for evidentiary hearings concerning the search as was done by the Circuit Court of Appeals in United States v. Robinson, 145 U.S.App.D.C. 46, 447 F.2d 1215. After the remand the conviction was reaffirmed. This resulted in a new appeal to the Circuit Court of Appeals (United States v. Robinson, 153 U.S.App.D.C. 114, 471 F.2d 1082), which reversed the conviction. The United States Supreme Court granted certiorari and reversed the Circuit Court. It held that in case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment but is also a "reasonable" search under that amendment. United States v. Robinson, 414 U.S. 218, 94 S. Ct. 467, 38 L.Ed.2d 427.

KNUDSON, Judge (concurring in dissent).

I concur in the dissent of Judge TEIGEN.