**UNITED STATES of America**

v.

**H. Rap BROWN.**

**Crim. No. 30966.**

United States District Court,
E. D. Louisiana,
New Orleans Division.

July 24, 1970.

George Pat Hand, Jr., New Orleans, La., Julian Murray, for the United States.

Michael Tigar, Murphy Bell, Baton Rouge, La., for defendant.

MITCHELL, District Judge.

The defendant, H. Rap Brown, was convicted by a jury in this Court on May 22, 1968, on the charge of transporting a firearm in interstate commerce while under indictment for a crime punishable by a term of imprisonment exceeding one year.[1]

On May 7, 1968, prior to defendant's trial, the Government revealed that de-

fendant had been a party to four telephonic conversations which had been electronically overheard. On May 13, 1968, immediately preceding defendant's trial, and after hearing argument, the Court denied defendant's motion for an open inspection of the electronic surveillances and granted the government's motion for an *in camera* inspection thereof. After a finding of non-relevancy, these documents were resealed as Exhibits 1–1, 1–2, 1–3 and 1–4.

This case is now before the Court on remand from the United States Court of Appeals for the Fifth Circuit[2] for further proceedings in conformity with Alderman v. United States[3] and related cases.

Conforming therewith, this Court, on May 11, 1970, conducted a hearing to determine (1) if, with respect to the defendant, there was electronic surveillance which violated his constitutional rights and, (2) if there was such surveillance, on the nature and relevance to his conviction of any conversations which may have been overheard through that surveillance.

After considering the evidence adduced at the hearing, argument and briefs submitted by counsel, the Court enters this opinion, the following to constitute findings of fact and conclusions of law as ordered in *Alderman*.

I

On September 22, 1969, under the terms of a protective order, the prosecution voluntarily disclosed Sealed Exhibit 1–4 to the defendant. The order provided that this exhibit would be available to the defendant and his attorneys for inspection, but that they would be prohibited from disclosing the contents to anyone without permission from the Court. However, during the course of the hearing it became apparent to the Court that it was impossible to conduct

1. 15 U.S.C. § 902(e).

2. H. Rap Brown v. United States of America (Slip Opinion #26249, C.A. 5– April 3, 1969).

3. 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969).

a public hearing and explore the relevance of this exhibit without revealing some of its pertinent details. The protective order was, in effect, dissolved when Exhibit 1–4 was admitted into evidence. The other exhibits, to be discussed later, were not disclosed to the defendant.

As outlined in Giordano v. United States,[4] the Court must first decide whether the defendant "has standing to assert the illegality of the surveillance or of the introduction of its fruits", and second, whether the surveillance was unlawful, for, if it was lawful, disclosure and further proceedings would be rendered unnecessary.

▋ The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures. Under the exclusionary rule originating in Weeks v. United States,[5] evidence seized from a defendant in violation of his Fourth Amendment rights may not be used at trial.

Fruits of such unlawful searches are excluded as well.[6] Because the amendment now affords protection against the uninvited ear, oral statements, if illegally overheard, and their fruits are also subject to suppression.[7]

Exhibit 1–4 is an FBI memorandum, dated March 1, 1968 made by an agent from information which was divulged to him by a New Orleans Police officer. This information concerned two telephone calls made by the defendant on February 29, 1968 while he was incarcerated in the Orleans Parish Prison.

The testimony revealed that, for security reasons, it is a policy of state prison officials to monitor telephone conversations of some prisoners in their custody. This surveillance was conducted by means of extension phones; the conversations were put on erasable tapes, turned over to the Intelligence Division of the New Orleans Police Department which made typewritten abstracts and thereafter the tapes were erased.[8] These surveillances were not conducted either with the assistance or at the request of the federal government[9] and no evidence was adduced at the hearing to indicate that the federal government was even aware that this practice was used.

At least ten of defendant's telephone conversations were monitored. However, Sgt. David Kent testified that the only overheard conversations which were revealed to him by Warden Falkenstein, and the only tape to which he listened, was the one which is the subject of this hearing. Without disclosing where he had obtained this information, Sgt. Kent, unknown to Warden Falkenstein, divulged the substance of Brown's conversations to Special Agent Robert J. Heibel of the FBI, who then prepared Exhibit 1–4.

The fact that defendant made these telephone calls from a prison office, plus testimony to the effect that Brown knew his conversations were being monitored, raises the question of whether this surveillance violated defendant's constitutional rights.

"* * * It is obvious that a jail shares none of the attributes of privacy of a home, an automobile, an office, or a hotel room. In prison, official

4. 394 U.S. 310, 89 S.Ct. 1163, 22 L.Ed.2d 297 (1969).

5. 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914).

6. Silverthorne Lumber Co. v. United States, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 (1920).

7. Silverman v. United States, 365 U.S. 505, 81 S.Ct. 679, 5 L.Ed.2d 734 (1961) ; Katz v. United States, 389 U.S. 347, 89 S.Ct. 507, 19 L.Ed.2d 576 (1967).

8. Testimony of Adam J. Falkenstein, Warden, New Orleans Parish Prison and Louis Heyd, Sheriff.

9. Testimony of Warden Falkenstein and Sgt. David Kent, New Orleans Police Department, Intelligence Division.

surveillance has traditionally been the order of the day." [10]

"This amounts to saying that a jail is not a constitutionally protected area * * *" [11]

But, as was stated in Katz v. United States, *supra*, the Fourth Amendment protects people and not places.

The government has not seriously contested defendant's standing to challenge the legality of the surveillance nor his right to suppress any illegally obtained evidence, therefore we need not decide that issue at this time. Assuming for the purposes of this hearing that the surveillance was illegal, we now must turn to the significance of Exhibit 1–4 to Brown's subsequent conviction. [12]

The only portion of Exhibit 1–4 which conceivably could have anything whatsoever to do with this case is as follows:

" * * * Kunstler stated that Brown could expect to remain in Orleans Parish Prison until March 20, 1968, at which time Kunstler would attempt to obtain his release for return to New York City."

The crime for which defendant was convicted occurred on August 17, 1967, for which he was indicted on August 22, 1967. The overheard conversation took place in February of 1968.

At no time during the post trial hearing did defendant show the Court that the information contained in the tape was used against him in any manner, either in the pre-trial investigation or during the trial.

Nor did defendant even attempt to point out just what portion of the tape tainted the government's case.

When an illegal search has come to light, the United States has the ultimate burden of persuasion to show that its evidence is untainted. But, at the same time, the accused must "prove that a substantial portion of the case against him was a fruit of the poisonous tree." [13]

Examining this exhibit in a light most likely to demonstrate prejudice to defendant, we can only conclude that there was not one scintilla of evidence in that log that could have in any way tainted the evidence produced by the government during defendant's trial. The jury's determination that defendant was guilty of the crime charged was based on evidence which clearly sprang from an "independent origin." [14]

We can only conclude that Exhibit 1–4 was totally irrelevant to defendant's conviction and the evidence given against him at his trial did not grow out of that conversation.

## II

It is defendant's contention, however, that because one of the overheard conversations took place between him and his attorney, there was an invasion of the attorney-client relationship and thus he need not show the relevancy of the conversation to his conviction but is automatically entitled to a new trial, citing Black v. United States, [15] O'Brien v. United States, [16] and Coplon v. United States. [17]

We disagree; those cases are clearly distinguishable. They stand for the proposition that a surreptitious invasion by a government agent into the legal camp of the defense may violate the protection of the Sixth Amendment. Those cases dealt with government in-

10. Lanza v. State of N. Y., 370 U.S. 139, 82 S.Ct. 1218, 8 L.Ed.2d 384 (1962).

11. United States v. Kahn, 251 F.Supp. 702 (S.D. N.Y.1966).

12. Alderman v. United States, *supra*.

13. Alderman v. United States, *supra*; see United States v. Nolan, 420 F.2d 552 (C.A. 5–1969).

14. Nardone v. United States, 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307 (1939).

15. 385 U.S. 26, 87 S.Ct. 190, 17 L.Ed.2d 26 (1966).

16. 386 U.S. 345, 87 S.Ct. 1158, 18 L.Ed.2d 94 (1967).

17. 89 U.S.App.D.C. 103, 191 F.2d 749 (1951).

trusion of the grossest kind upon the confidential relationship between the defendant and his counsel, while matters were under investigation.[18]

Assuming, arguendo, that there had been a Sixth Amendment violation, the evidence adduced at defendant's trial was in no sense the "fruit" of any such violation. "The more apt question in such a case is 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.' " [19]

█ We find no relevancy between this monitored conversation and defendant's conviction. It is perfectly clear that the tainted conversations bore no relation whatever to the offense charged.

Even in *Alderman, supra,* the Court indicated that the only time a new trial should be granted is when the Court decides there was a violation of defendant's constitutional rights and defendant's conviction was tainted by such violation.

█ The fact of monitoring an attorney-client conversation without more— specifically, without a concession that the matter discussed involved the alleged offense in question—does not demand an automatic retrial but where the court "can determine, after hearing, whether or not the subject matter of the overheard attorney-client conversation involved the legal charge at bar, remand and not retrial is, at least, initially, the appropriate course." [20]

## III

As we stated earlier, Sealed Exhibits 1–1, 1–2 and 1–3 were not disclosed to the defendant. These exhibits, along with the authorization for the wiretaps, were sealed and returned to the Justice Department.

It is the government's position that the surveillances here in question should be declared lawful on the ground that they were authorized by the President or the Attorney General for the purpose of national security. We agree.

A finding by the District Court that the surveillance was lawful would make disclosure and further proceedings unnecessary and the determination of the legality of the surveillance can appropriately be made in *ex parte, in camera* proceedings.[21]

The Supreme Court has never decided whether the Attorney General's authorization of a wiretap for the purpose of gathering foreign intelligence information violates the Fourth Amendment.[22]

The question was specifically reserved in Katz v. United States.[23]

---

18. In *Black, supra,* while the offense was being investigated and while evidence was being presented to the Grand Jury, hotel room conversations between Black and his attorney were taped and contents of these conversations had been incorporated in memoranda used by prosecuting attorneys. *O'Brien, supra,* in which the court also ordered a new trial, likewise involved eavesdropping on a conversation between petitioner and his attorney about the controversy in question. In *Coplon,* government agents deliberately intercepted telephone consultations between defendant and her lawyer before and during the trial. In Caldwell v. United States, 92 U.S.App.D.C. 355, 205 F.2d 879 (1953) a government agent worked in the defense camp and his reports to the prosecution covered many matters connected with the impending trial.

19. Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

20. Taglianetti v. United States, 398 F.2d 558 (C.A. 1–1968) aff. 394 U.S. 316, 89 S.Ct. 1099, 22 L.Ed.2d 302 (1969); Granello v. United States, 386 U.S. 1019, 87 S.Ct. 1367, 18 L.Ed.2d 458 (1967); Hoffa v. United States, 387 U.S. 231, 87 S.Ct. 1583, 18 L.Ed.2d 738 (1967).

21. Giordano v. United States, *supra,* Mr. Justice Stewart concurring; Taglianetti v. United States, *supra;* United States v. Battaglia, 410 F.2d 279 (C.A. 7–1969).

22. See concurring opinion of Mr. Justice Stewart in Giordano v. United States, *supra,* 394 U.S. at pp. 314–315, 89 S.Ct. 1163.

23. 89 S.Ct. 507 at pp. 517–518.

In determining whether to employ wiretapping, the President or the Attorney General must make a judgment based on foreign policy considerations.

We are in complete agreement with Judge Ingraham's wise and incisive comments in United States v. Clay: [24]

"* * * it is the executive and not the judiciary, which alone possesses both the expertise and the factual background to assess the reasonableness of such a surveillance. From a purely practical standpoint, it would be ridiculous to place on a U. S. Commissioner the burden of deciding what is and is not a threat to national security.

"The court does not believe the judiciary should question the decision of the executive department that such surveillances are reasonable and necessary to the protection of the national interest."

■ We conclude, therefore, that if the President of the United States or his chief legal officer, the Attorney General, have considered the requirements of national security and authorized electronic surveillance as reasonable, the judiciary should not question the decision of the executive department.

The exclusionary rule of Weeks v. United States, *supra*, applies to violations of Section 605 of the Communications Act of 1934 [25] which prohibits the interception and divulgence of telephone conversations without the authorization of the sender.[26]

Therefore, the remaining question is whether electronic surveillance, conducted solely for the purpose of gathering foreign intelligence information, violates Section 605 of the Federal Communications Act.

In Nardone v. United States, *supra,* the Court held that, under Section 605, wiretap evidence acquired by federal officers was inadmissible at a criminal trial.

We are in agreement with Judges Hoffman [27] and Gasch [28] that the *Nardone* case reflects no awareness of the problem of the need to gather intelligence information.

The recently enacted Omnibus Crime Control & Safe Streets Act of 1968 [29] specifically exempts from its own restrictions, and those of the Federal Communications Act, any wiretapping authorized pursuant to the Constitutional power of the President to "protect the nation against actual or potential attack or other hostile acts of a foreign power, to obtain foreign intelligence information deemed essential to the security of the United States, or to protect national security against foreign intelligence activities."

From an *in camera* examination of Exhibits 1–1, 1–2 and 1–3, we find that these logs were authorized by the then Attorney General in writing; [30] they were not made pursuant to a surveillance of defendant but rather of others, and the premises were identified; that they were made in connection with obtaining foreign intelligence information; that the Executive Branch of the Government has properly and reasonably requested these exhibits not be disclosed to the defendant or the public because "it would prejudice the national interest to disclose the particular facts concerning this surveillance other than to the Court

24. (S.D.Tex., Houston Div., Cr. # 67–11–94. Memorandum Opinion of 7/14/69, aff. 430 F.2d 165 (C.A. 5–July 6, 1970).

25. 47 U.S.C. § 605.

26. Nardone v. United States, 302 U.S. 379, 58 S.Ct. 275, 82 L.Ed. 314 (1937); Nardone v. United States, 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307 (1939); Benanti v. United States, 355 U.S. 96, 78 S.Ct. 155, 2 L.Ed.2d 126 (1957); Lee v. Flor-

ida, 392 U.S. 378, 88 S.Ct. 2096, 20 L.Ed. 2d 1166 (1967).

27. United States v. Dellinger et al. (N.D. Ill.Cr. # 69CR180 Memorandum opinion of 2/20/70).

28. United States v. Stone, 305 F.Supp. 75 (D.C.1969).

29. 18 U.S.C. § 2511(3).

30. Sealed Exhibit 2.

*in camera"* [31] and its contents do not in any manner bear upon the issues involved in this case, and in no way have these wiretaps prejudiced defendant, helped build a case against him, or assisted in bringing about his conviction.

We were impressed with the total absence of any connection between these exhibits and the charges pending against the defendant and cannot conceive of how this information could possibly taint defendant's conviction.

■ We therefore hold, as to Exhibits 1–1, 1–2 and 1–3, that wiretaps conducted solely for the purpose of gathering foreign intelligence information without the consent of either party to the conversation, are not proscribed by 47 U.S.C. § 605.[32]

■ For the reasons set forth, we conclude the surveillance was lawful and consequently not subject to the disclosure requirements of Alderman v. United States, *supra*.[33]

### IV

Defendant has contended that the prosecution has the burden of establishing that all wiretap information to which defendant had been a party has been disclosed. At the close of the hearing, we left this matter open to give the government an opportunity to submit affidavits.

The affidavit of Ralph H. Alkire [34] states that during the period of May 14, 1967 to May 22, 1968, no employee of the Alcohol, Tobacco & Firearms Division intercepted or monitored and/or recorded any private conversation of the defendant.

The affidavit of Carl Belcher [35] states that a review of the Department of Justice records was conducted prior to defendant's trial and the only conversations of the defendant monitored by electronic surveillance are the exhibits in this case.

Defendant has moved to strike these affidavits and to set a hearing date to examine Messrs. Alkire and Belcher under oath, in open court.

It is asserted by the government, and we accept such assertion as true, that these logs were the only ones found in the government's files in which defendant's conversations were overheard.

In summation, after examination of Exhibits 1–1, 1–2 and 1–3 *in camera*, and after hearing oral argument and considering written briefs on this subject, the Court finds that each of the surveillances was lawful and therefore no disclosure of any of these exhibits to the defendant is required.

■ As to Exhibit 1–4, which was furnished to defendant, the district court, in some circumstances, can determine in an *in camera* inspection that wiretap evidence is innocuous.[36] Nevertheless, we gave defendant an adequate opportunity to prove relevance in an adversary proceeding which was as extensive as *Alderman* requires. Defendant failed to come forward with any showing that this overheard conversation was used in evidence, or even led to any evidence used in the trial.

It is, moreover, apparent from the face of these exhibits that they are wholly unrelated to any evidence introduced at trial.

31. Affidavit of Attorney General John N. Mitchell.

32. United States v. Clay, *supra*.

33. Taglianetti v. United States, *supra*.

34. Acting Director, Alcohol, Tobacco & Firearms Division, Internal Revenue Service.

35. Chief, General Crimes Section, Criminal Division, United States Department of Justice, Washington, D. C.

36. Taglianetti v. United States, *supra*.

In these circumstances we find that the conviction of defendant is in no way tainted by unlawful electronic overhearings and defendant's conviction must stand.

Therefore, it is ordered that the defendant, H. Rap Brown, appear before this Court on the 9th day of September, 1970, at 2:00 P.M., for sentencing.