STATE of North Dakota, Plaintiff-Appellant,

v.

Jeanne FISCHER, Defendant-Appellee.

STATE of North Dakota, Plaintiff-Appellant and Cross-Appellee,

v.

Susan FISCHER, Defendant-Appellee and Cross-Appellant.

Cr. Nos. 646, 647.

Supreme Court of North Dakota.

Sept. 29, 1978.

Thomas M. Tuntland, Asst. State's Atty., Mandan, for plaintiff-appellant and cross-appellee.

Benjamin C. Pulkrabek, Mandan, for defendant-appellee Jeanne Fischer.

Baer, Asbridge & Robb, Bismarck, for defendant-appellee and cross-appellant Susan Fischer; submitted on brief, Darold A. Asbridge, Bismarck.

PAULSON, Justice.

The State has appealed to this court from the order suppressing evidence in these two related criminal actions by the Morton County District Court. The State contends that the district court erroneously suppressed certain evidence on the ground that it was seized pursuant to an illegally obtained search warrant in violation of the Fourth Amendment to the United States Constitution and § 18 of the North Dakota Constitution. We reverse.

On February 17, 1978, Robert Fischer, husband of the defendant Susan Fischer and brother of the defendant Jeanne Fischer, was incarcerated in the Morton County jail.

The Morton County jail is a two-story building that has a cell block on each floor. Each cell block contains six separate cells. The jail office area is located on the first floor of the jail adjacent to the first floor cell block.

On February 17, 1978, Robert Fischer was the only prisoner being held in the second floor cell block. The jail's telephone switchboard is located in the first floor office. An extension phone for prisoners' use is located outside of each cell block. Each telephone's receiver can be handed through the cell bars to a prisoner.

Rules regarding prisoners' telephone calls in the Morton County jail are promulgated by the district court judges of the Sixth Judicial District. In addition, the Morton County Sheriff has set some rules of his own. Both sets of rules are posted in each cell block. The rules indicate that a prisoner is allowed to have one outgoing and one incoming telephone call each day. These calls are not to exceed five minutes in length according to the jail rules, but Jailer Robert Parsons testified at the suppression hearing that the time limit had been extended to ten minutes.

Prisoners may receive telephone calls between the hours of nine o'clock a. m. and twelve o'clock noon and one o'clock p. m. and five o'clock p. m. Prisoners may not receive telephone calls between noon and one o'clock p. m. because the jailer must feed the prisoners and answer the phone for the Morton County sheriff's office during the noon hour.

Jailer Parsons testified that when a prisoner receives an incoming call the jailer puts the call on "hold", walks to the cell block, hands the extension phone to the inmate, connects the two parties, and then returns to the switchboard. At the end of ten minutes the jailer is supposed to terminate the conversation.

When an inmate using the telephone is in the first floor cell block, Jailer Parsons usually walks to the cell block door and directly advises the inmate that his time is up.

When the inmate using the telephone is in the second floor cell block, Jailer Parsons occasionally walks to the second floor cell block and directly advises the inmate that his time is up. Usually, however, when the telephone call is to an inmate lodged in the second floor cell block Jailer Parsons picks up the telephone at the switchboard, listens until there is a break in the conversation, and then tells the parties that their time is up.

On the morning of February 17, 1978, a phone call was made to the Morton County jail by a woman who identified herself as Susan Fischer and requested to speak to Robert Fischer. Jailer Parsons answered the telephone and connected the two parties. The conversation was terminated by the parties in less than ten minutes.

Between twelve o'clock noon and one o'clock p. m. on that day another phone call was made to the jail by a woman who requested to speak to Robert Fischer. Although the caller did not identify herself, Jailer Parsons believed the caller to be the same woman who had called earlier and had identified herself as Susan Fischer. Because the call was made during the noon hour, Jailer Parsons advised the caller to call back after one o'clock p. m.

At one-twenty p. m. a party, whose voice Parsons recognized as the voice of the woman who had earlier identified herself as Susan Fischer, called back and requested permission to speak to Robert Fischer. Jailer Parsons put the party on "hold", walked upstairs, and handed Robert Fischer the second floor extension telephone, connected the parties, and returned to the first floor office area.

When the parties' conversation exceeded ten minutes, Jailer Parsons decided to terminate the call. He lifted the receiver, heard an ongoing conversation, and waited for a slight break to tell the parties that their time was up.

While waiting for a break in the conversation, Jailer Parsons heard Robert Fischer ask the other party to bring him a couple of "joints". Because Jailer Parsons was aware that marijuana cigarettes are commonly referred to as "joints", he continued to listen to determine if contraband was going to be brought into the jail.

While Jailer Parsons continued to listen, the two parties talked about selling a few jars of "speed" to raise bond money for Robert Fischer. Jailer Parsons testified that the woman, whom he believed to be Susan Fischer, stated "We will see what we can do on it". Shortly thereafter the parties ended their conversation.

Jailer Parsons, who is aware that "speed" is a common name for a type of controlled substance, then contacted Deputies Michael Stensrud and Lynn White of the Morton County Sheriff's Office to inform them of the telephone call. He advised them that he believed that the woman caller was Susan Fischer, wife of Robert Fischer, and that he believed that there was a probability that she had illegal drugs in her possession.

The two officers obtained a search warrant based mainly upon the information given them by Jailer Parsons and they searched Susan Fischer's house at 228 South Prairie Lane in Mandan. Police officers executed the warrant, searched the premises, and found a substantial quantity of certain illegal drugs. The police also found illegal drugs in a brown purse owned by Jeanne Fischer.

Susan Fischer was arrested and charged with possession of a controlled substance with intent to deliver. Jeanne Fischer was arrested and charged with possession of a controlled substance. Both defendants were arraigned in district court. They jointly moved to suppress the evidence obtained in the search of the premises at 228 South Prairie Lane in Mandan. They claimed that Jailer Parsons had conducted an illegal search when he overheard the telephone conversation between Robert Fischer and Susan Fischer. Because the illegally obtained evidence was used to establish probable cause for issuance of the search warrant, the defendants claimed that the warrant was invalid and that evidence obtained pursuant to it must be suppressed.

The evidence was suppressed by the district court and the State has appealed the suppression order.

The defendant, Susan Fischer, has raised several cross-appeal issues in this case. She contends that these issues provide additional reasons for suppressing the evidence obtained in the search of her trailer house. Her cross-appeal issues include whether or not:

(1) The search warrant was based upon unreliable hearsay;

(2) There was sufficient probable cause for the issuance of the search warrant;

(3) Section 47 U.S.C. § 605 precludes the use of the contents of an overheard telephone conversation for the issuance of a search warrant;

(4) Section 18 U.S.C. §§ 2510–2515 precludes the use of the contents of an overheard telephone conversation for the issuance of a search warrant;

(5) The conversation between Robert and Susan Fischer was a privileged husband-wife communication which precludes the disclosure of its contents by a third party for the issuance of a search warrant; and

(6) The magistrate who issued the search warrant was neutral and detached.

The following issues are raised by the appellant:

(1) Did Jeanne Fischer have standing to bring a motion to suppress the evidence obtained during the February 17 search of Susan Fischer's house?

(2) Do the defendants have the right to cross-appeal in this case in which the State is appealing the district court's order suppressing evidence?

(3) Did the trial court err in ordering the suppression of the evidence obtained during the search of defendant Susan Fischer's house on the basis that the search warrant was invalid because the information establishing probable cause for the warrant had been improperly obtained?

## ISSUE OF STANDING

We will first consider the issue of Jeanne Fischer's standing to bring a motion to suppress evidence obtained in violation of her Fourth Amendment rights. Although the record does not show whether or not Jeanne Fischer lived in the trailer house at 228 South Prairie Lane in Mandan, she was on the premises during the February 17 search. In addition, her purse was searched by the police and was found to contain the illegal drugs that constitute the basis of the case against her.

■ The Fourth Amendment to the United States Constitution provides, in part, that "The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures, shall not be violated . . .." Section 18 of the North Dakota Constitution is essentially the same. The constitutional rights guaranteed by the Fourth Amendment may be enforced by the exclusion of evidence under the exclusionary rule which was applied to the Federal courts in *Weeks v. United States*, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914), and extended to the States in *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).

■ According to *Alderman v. United States*, 394 U.S. 165, 174, 89 S.Ct. 961, 966, 22 L.Ed.2d 176 (1969) "Fourth Amendment rights are personal rights which . . . may not be vicariously asserted". *See Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), and *Jones v. United States*, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960). The Fourth Amendment was intended to protect a certain class of people. A person has standing to invoke the exclusionary rule only when he is a member of the protected class because his own protection has been infringed by an improper search and seizure and when the evidence obtained in the search and seizure is going to be used against him. *Mancusi v. DeForte*, 392 U.S. 364, 366, 88 S.Ct. 2120, 20 L.Ed.2d 1154 (1968); *Jones v. United States, supra* 362 U.S. at 260–261, 80 S.Ct. 725; *Simmons v. United States, supra* 390 U.S. at 389, 88 S.Ct. 967; *People of State of*

*New York ex rel. Hatch v. Reardon,* 204 U.S. 152, 160, 27 S.Ct. 188, 51 L.Ed. 415 (1907).

■ The modern law regarding standing to invoke the exclusionary rule was developed by the United States Supreme Court in *Jones v. United States, supra.* In *Jones,* the Court held that standing could be based on three alternative grounds: (1) standing based upon an interest in the property seized; or (2) standing based upon a possessory or proprietary interest in the premises or a legitimate presence upon the premises at the time of the search; or (3) automatic standing to contest a seizure of goods when the offense charged is possessory and is based upon the possession of the seized goods. *See State v. Matthews,* 216 N.W.2d 90 (N.D.1974).

Prior to *Jones,* a person who claimed an interest in the property seized had standing to attack the seizure. *Jones v. United States, supra* 362 U.S. at 261, 80 S.Ct. 725; and *Simmons v. United States, supra* 390 U.S. at 389–390, 88 S.Ct. 967. This basis for standing was perpetuated by the *Jones* decision.

Standing could also be established by a defendant who claimed a possessory or proprietary interest in the premises searched. This standing basis was extended by *Jones* to include anyone who was properly on the searched premises at the time of the search. The Court in *Jones* stated that "anyone legitimately on premises where a search occurs may challenge its legality by way of a motion to suppress, when its fruits are proposed to be used against him". *Jones, supra* 362 U.S. at 267, 80 S.Ct. at 734.

The United States Supreme Court, in *Jones,* also developed a new basis for conferring standing to invoke the exclusionary rule. The Court held that one charged with a possessory crime has automatic standing to attack the seizure of goods on which the charge is based. The Court stated that "In cases where the indictment itself charges possession, the defendant in a very real sense is revealed as a 'person aggrieved by an unlawful search and seizure' upon a motion to suppress evidence prior to trial."

*Jones, supra* 362 U.S. at 264, 80 S.Ct. at 733. *See Matthews, supra* 216 N.W.2d at 96–99.

■ In the present case, Jeanne Fischer had an interest in contraband drugs that were seized from her purse. In addition, she was on the premises at the time of the search. We must assume that she was legitimately on the premises because the State has not contended otherwise. Finally, since Jeanne Fischer has been charged with a possessory crime, possession of a controlled substance, *Jones's* automatic standing rule would be applicable.

We hold, therefore, that Jeanne Fischer had standing to bring a motion to suppress the evidence proposed to be used against her which was seized during the February 17, 1978, search of Susan Fischer's trailer home at 228 South Prairie Lane in Mandan.

## ISSUE OF CROSS–APPEAL

■ We will now consider whether or not Susan Fischer's cross-appeal issues are properly before us. Susan Fischer's attorney filed a notice of cross-appeal and discussed the cross-appeal issues in his briefs.

Section 90 of the North Dakota Constitution, as amended, states that:

"Appeals shall be allowed from decisions of lower courts to the supreme court as may be provided by law."

Even before the Legislature specifically included this provision in our Constitution, we held that §§ 86 and 109 of the North Dakota Constitution conferred no constitutional right of appeal and that the right of appeal is subject to state statutes conferring that right. *Reub's Minot Camera, Inc. v. General Electric Credit Corporation,* 201 N.W.2d 877 (N.D.1972). In numerous cases we have held that there is no right of appeal unless a statute specifically confers such a right. *See State v. Johnson,* 142 N.W.2d 110 (N.D. 1966); *State v. McEnroe,* 69 N.D. 445, 287 N.W. 817 (1939); *Quarton v. O'Neil,* 51 N.D. 842, 200 N.W. 1010 (1924); *State v. Fortune,* 29 N.D. 289, 150 N.W. 926 (1915).

In this case, Susan Fischer's right of appeal is governed by § 29–28–06 of the

North Dakota Century Code. The statute provides:

> "*From what defendant may appeal.*—An appeal may be taken by the defendant from:
> 1. A verdict of guilty;
> 2. A final judgment of conviction;
> 3. An order refusing a motion in arrest of judgment;
> 4. An order denying a motion for a new trial; or
> 5. An order made after judgment affecting any substantial right of the party."

In the present case, Susan Fischer's cross-appeal is in response to the State's appeal from the district court's order suppressing evidence. The cross-appeal does not satisfy any of the five grounds for appeal enumerated in § 29–28–06, N.D.C.C. However, we have treated the grounds as resistance to the appeal and find them to be without merit.

### ISSUE OF FOURTH AMENDMENT

The district court issued an order suppressing evidence based on its findings and conclusions that neither party had prior notice that their telephone conversation might be monitored; that Susan and Robert Fischer had a reasonable expectation of privacy while talking on the jail's telephone; and that Jailer Robert Parsons committed an unlawful search in violation of the Fourth Amendment of the United States Constitution and § 18 of the North Dakota Constitution when he listened in on the February 17, 1977, jail telephone conversation between Susan Fischer and Robert Fischer. The State, in its appeal, claims that Jailer Parsons' overhearing of the telephone conversation between Susan Fischer and Robert Fischer on the jail telephone was not an unlawful search because the usual Fourth Amendment protections against unreasonable searches and seizures do not apply in penal institutions.

The United States Constitution and the North Dakota Constitution provide protections against "unreasonable searches and seizures". As we stated in *State v. Erdman*, 170 N.W.2d 872, 875 (N.D.1969):

"There is no formula for determining the reasonableness of a search under the Federal or the State constitutional forbiddance of unreasonable searches and seizures, as prohibited by the Fourth Amendment to the United States Constitution and by Section 18 of the North Dakota Constitution. Each case must stand or fall upon its own facts and circumstances. *State v. Chaussee*, 138 N.W.2d 788 (N.D.1965)."

See *State v. Gagnon*, 207 N.W.2d 260 (N.D. 1973); *Harris v. United States*, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399 (1947); *United States v. Rabinowitz*, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653 (1950). Because the circumstances surrounding a search are important in determining the reasonableness of the search, the fact that the search in the present case took place in a jail is central to our decision.

Traditionally, Fourth Amendment cases have been decided on the basis of whether or not the search took place in a constitutionally protected area, *e. g.*, a person's house. *Lanza v. New York*, 370 U.S. 139, 82 S.Ct. 1218, 8 L.Ed.2d 384 (1962), specifically discussed the applicability of the Fourth Amendment to penal institutions and indicated that a jail is not a constitutionally protected area.

In *Lanza*, jail officials had monitored and recorded a conversation between the defendant and his incarcerated brother in the jail's visiting room. The Court rejected Lanza's claim that the visiting room of a jail is a constitutionally protected area.

The United States Supreme Court stated, in *Lanza, supra* 370 U.S. at 143, 82 S.Ct. at 1220:

"... to say that a public jail is the equivalent of a man's 'house' or that it is a place where he can claim constitutional immunity from search or seizure of his person, his papers, or his effects, is at best a novel argument. To be sure, the Court has been far from niggardly in construing the physical scope of Fourth Amendment protection. A business of-

fice is a protected area, and so may be a store. A hotel room, in the eyes of the Fourth Amendment, may become a person's 'house,' and so, of course, may an apartment. An automobile may not be unreasonably searched. Neither may an occupied taxicab. Yet, without attempting either to define or to predict the ultimate scope of Fourth Amendment protection, it is obvious that a jail shares none of the attributes of privacy of a home, an automobile, an office, or a hotel room. In prison, official surveillance has traditionally been the order of the day." [Footnotes omitted.]

Since *Lanza*, several courts have indicated that, in terms of protected areas, the usual Fourth Amendment protections do not apply in a penal institution. *United States v. Kelley*, 393 F.Supp. 755, 756–757 (W.D.Okl.1975), stated that "prisons and reformatories have been held not to be within the protection of the Fourth Amendment"; *Gettleman v. Werner*, 377 F.Supp. 445 (W.D.Pa.1974), held that the constitutional rights of a prison employee may be diluted in prison; and *Hoitt v. Vitek*, 361 F.Supp. 1238 (D.N.H.1973), and *United States v. Kahn*, 251 F.Supp. 702 (S.D.N.Y. 1966), held that a jail cell is not a constitutionally protected area.

In *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), the United States Supreme Court developed a new analytical framework for reviewing Fourth Amendment issues. Instead of determining the reasonableness of a search by looking at the area searched to determine if it was a constitutionally protected area, the Court will now inquire whether the person who is the subject of the search had a "reasonable expectation of privacy". This new doctrine, however, does not completely abolish the importance of the constitutionally protected area doctrine because the area of the search is still an important factor in determining whether or not the person searched had a reasonable expectation of privacy. *See United States v. Hearst*, 412 F.Supp. 888, 889 (N.D.Cal.1976), which held that "reference to the 'place' of

surveillance must be had in determining whether an unconstitutional search and seizure has occurred".

The United States Supreme Court, in *Katz, supra* 389 U.S. at 350, 88 S.Ct. at 510, stated that:

". . . the correct solution of Fourth Amendment problems is not necessarily promoted by incantation of the phrase 'constitutionally protected area' ".

The Court held, in *Katz, supra* 389 U.S. at 351, 88 S.Ct. at 511:

". . . the Fourth Amendment protects people, not places. What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection. [Citations omitted.] But what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected."

We adopted the *Katz* interpretation of the Fourth Amendment in *State v. Matthews*, 216 N.W.2d 90, 103 (N.D.1974); and in *State v. Howe*, 182 N.W.2d 658, 662 (N.D. 1971), *cert. den.* 403 U.S. 933, 91 S.Ct. 2261, 29 L.Ed.2d 712 (1971).

Many cases since *Katz* have applied the reasonable expectation of privacy test to jailhouse search situations and have upheld jail surveillance of prisoners. As a general rule, a person in a penal institution rarely has a "reasonable expectation of privacy". Privacy in jail is not an expectation considered to be reasonable by society. See *Lanza, supra*, 370 U.S. 139, 82 S.Ct. 1218; *United States v. Hitchcock*, 467 F.2d 1107 (9th Cir. 1972), *cert. den.* 410 U.S. 916, 93 S.Ct. 973, 35 L.Ed.2d 279 (1973); *United States v. Hearst*, 563 F.2d 1331 (9th Cir. 1977); *United States v. Stumes*, 549 F.2d 831 (8th Cir. 1977); *United States v. Dawson*, 516 F.2d 796 (9th Cir. 1975), *cert. den.* 423 U.S. 855, 96 S.Ct. 104, 46 L.Ed.2d 80 (1975); *Gettleman, supra* ; and *United States v. Brown*, 317 F.Supp. 531 (E.D.La. 1970).

The main reason for reduced Fourth Amendment protection in prison is the recognized governmental interest in maintain-

ing security and order. *Hearst, supra* 563 F.2d at 1345. As stated in *Gettleman, supra* 377 F.Supp. at 451:

"A Penitentiary is a unique institution fraught with sensitive security hazards, not the least of these being smuggling of contraband such as drugs, money, knives, etc. The state has a high security interest in eliminating smuggling into and out of penitentiaries". [Footnotes omitted.] *See, Stumes, supra.*

We must now consider whether Robert and Susan Fischer had a "reasonable expectation of privacy", *i. e.*, that their telephone conversations on the jail's telephone line would not be monitored by jail personnel. When determining the constitutionality of the search in the present case, we must consider several other cases that have specifically dealt with monitored jail conversations.

In *United States v. Hearst, supra* 412 F.Supp. 888, the Federal District Court refused to suppress the contents of several tape recordings of conversations between the defendant and her family and friends which were held in the county jail. The Court held that the search and seizure of the defendant's conversations did not violate the Fourth Amendment because the defendant had a lower expectation of privacy in jail. *Id.* at 889. The Ninth Circuit Court of Appeals affirmed the decision. *United States v. Hearst, supra* 563 F.2d at 1344–1345.

In *North v. Superior Court of Riverside County,* 8 Cal.3d 301, 104 Cal.Rptr. 833, 502 P.2d 1305 (1972), a police detective allowed a prisoner and his wife to use the detective's private office in the jail building to hold a conversation. The detective left the two people alone in the office, shut the door, and monitored their conversation by using a hidden tape recorder. The California Supreme Court held that, under the circumstances, the defendant had a reason-

able expectation of privacy in that the detective's search by means of tape recording the conversation was unlawful.

■ *North* held that, as a general rule, "an inmate of a jail ordinarily has no right of privacy". *North, supra,* 104 Cal.Rptr. at 837, 502 P.2d at 1309. In addition "an ordinary jailhouse conversation between spouses could not be deemed to have been 'made in confidence'" as is necessary to invoke the husband-wife privilege.[1] *Id.,* 104 Cal.Rptr. at 839, 502 P.2d at 1311. In *North,* however, the detective's actions "lulled" the defendant and his wife "into believing that their conversation would be confidential". *Id.,* 104 Cal.Rptr. at 839, 502 P.2d at 1311. Under the circumstances, the parties to the conversation had a reasonable expectation of privacy which was violated by the search resulting from the detective's taping of their conversation.

In conclusion, the *North* court emphasized that its decision was directed toward the outrageous activities of the detective and that most jailhouse communications between spouses would not be entitled to Fourth Amendment protection. The court stated that:

". . . nothing in our opinion should be deemed a disapproval of the common practice of monitoring inmates' conversations with others, including their spouses, in visiting rooms or similar places. That practice seems reasonably necessary in order to maintain jail security . . . . But jail security can be adequately maintained without resorting to the deliberate creation of a situation in which marital privacy could reasonably be expected to exist. We cannot sanction the device of secretly exploiting marital confidences, as was done under the circumstances of this case, for the sole purpose of gathering possibly incriminating evidence. Such a device constitutes, we believe, an 'unrea-

1. The California husband-wife privilege allows a spouse to invoke the privilege against a third-party eavesdropper when the communication was made in confidence. *See North, supra,* 104 Cal.Rptr. at 838, 502 P.2d at 1310, for a discussion of the California husband-wife stat-

ute applicable at the time that *North* was decided. North Dakota's husband-wife privilege does not allow a spouse to invoke the privilege against a third-party eavesdropper. Rule 504, North Dakota Rules of Evidence.

sonable governmental intrusion' of the sort condemned in our prior cases." *North, supra*, 104 Cal.Rptr. at p. 839, 502 P.2d at 1311–1312.

In *People v. Hill*, 12 Cal.3d 731, 117 Cal. Rptr. 393, 528 P.2d 1 (1974), the conversation between the defendant and his wife was recorded while they talked over a jailhouse intercom. The California Supreme Court followed the general rule which it stated in *North, supra*, that most jailhouse conversations between spouses are not made in confidence. *Hill, supra*, 117 Cal. Rptr. at 418, 528 P.2d at 26. The court reiterated that its *North* decision was based on the detective's "deliberate attempt to *create* an expectation of privacy" [italics in original]. *Id.* In upholding the tape recording search and seizure of the conversation between spouses, the court held that "Absent such unusual circumstances [as in *North*], spouses can have no reasonable expectation that their jailhouse conversations will be private". *Id.*

In the present case, Robert and Susan Fischer were talking on a jail telephone. We believe that the overheard telephone conversation should be treated the same as a monitored jail visiting room conversation or an intercom conversation because, in all three cases, the verbal exchange took place in a jail.

■ As with most jailhouse conversations, we adopt the view that parties to a jailhouse conversation usually have no reasonable expectation of privacy due to the security needs of maintaining order and of limiting the introduction of contraband, such as drugs, into the jail. In some rare cases, a party to a jailhouse conversation may be given an expectation of privacy due to the deceptive actions of law enforcement personnel. In the present case, however, neither Jailer Parsons nor anyone else made any representations to the Fischers that their conversation would be private.

■ We hold that Robert Fischer had no reasonable expectation of privacy while he was in jail. Although he was the only prisoner being held in the second floor cell

block, he had no reason to believe that his telephone calls would not be monitored. Because Robert Fischer had no reasonable expectation of privacy, Jailer Parsons' listening in on Fischer's conversation constituted a proper search under the United States Constitution and the North Dakota Constitution. The statements made by Robert Fischer during the conversation that incriminated Susan Fischer were properly used as a basis for the showing of probable cause for the issuance of a warrant in order to search Susan Fischer's trailer house. Therefore, we reject the defendants' argument that the warrant was improper because the information that provided probable cause was obtained as a result of an unlawful search.

We hold that the February 17, 1978, search of Susan Fischer's trailer house at 228 South Prairie Lane in Mandan was not unconstitutional and that the evidence obtained during the search may be used against Susan Fischer and Jeanne Fischer at their trials.

The order suppressing evidence is reversed.

ERICKSTAD, C. J., and PEDERSON, VANDEWALLE and SAND, JJ., concur.