**STATE of North Dakota, Plaintiff and Appellee,**

v.

**John Joseph KLODT, Defendant and Appellant.**

Cr. No. 727.

Supreme Court of North Dakota.

Nov. 3, 1980.

Rehearing Denied Nov. 21, 1980.

Kent M. Morrow, Asst. State's Atty., Watford City, for plaintiff and appellee State of North Dakota (on brief).

James L. Taylor, Watford City, for defendant and appellant (on brief).

VANDE WALLE, Justice.

John Joseph Klodt appeals from a judgment of conviction [1] of the crime of theft of property, a Class C felony, in McKenzie County district court after a trial to the court without a jury. We affirm.

The State and Klodt, through their respective counsel, have entered into a stipulation of facts and of record for appeal. The pertinent part of that stipulation is as follows:

"That on or about the 20th day of October, A.D.1979, and at the request of Mike Baranko, as owner of a store and postoffice building on an eight-acre tract of land located along US Highway # 85

---

1. The Notice of Appeal indicates that Klodt appeals "... from the Order of the District Court Denying Defendant's Motion to Suppress Evidence (Air Bottles and Voluntary Statement) seized in a warrantless search of Defendant's pickup truck vehicle entered on the 11th day of April, A.D.1980, and which evidence was received at a trial by the Court resulting in a finding of guilty and his Judgment of Conviction on April 17, 1980."

Section 29-28-06, N.D.C.C., specifies from what a defendant may appeal. An order denying a defendant's motion to suppress evidence is not one of the orders which is appealable. However, a final judgment of conviction is appealable. Because a final judgment of conviction has been entered in this case we will consider the notice of appeal as an appeal from a judgment of conviction in which Klodt has raised as an issue the denial of his motion to suppress evidence.

between Watford City and Dickinson in North Dakota, Sheriff Ted Cornell of Billings County came to move a pickup truck parked near the entrance of the Baranko store when after several days no one came to move or claim it. Unable to start the pickup, Sheriff Cornell enlisted the assistance of Frank Rodakowsky, a county commissioner of Billings County, who the following day moved the pickup to his quonset building close by, being used as a county road shed. The pickup was repaired and three or four weeks later was moved to Medora, North Dakota and parked near the Sheriff's own garage where it still stands.

"In the back of the pickup was a barrel of oil, a barrel of gas, junk items and some old dirty and greasy clothes. The wind had dislodged some of the clothes in such a way that the Sheriff was able to determine that underneath there were air tanks and masks customarily used in the oil well drilling industry. In all there were seven (7) of such tanks and masks with one oxygen resuscitator, two (2) of which were located in the front or cab of the pickup. With the aid of a flashlight, the Sheriff took the serial numbers off the tanks and then called Norbert Sickler of the North Dakota Crime Bureau, who in turn advised Sheriff Cornell to take the property into his custody and store it in his vault in Medora so that no one would steal it, which the Sheriff did. Two days later information was received by Sheriff Cornell and the North Dakota Crime Bureau that similar items of prop-

erty were reported missing on or about the 16th day of October, A.D., 1979 from an oil well site located in McKenzie County, only a few miles from the Baranko store. Upon the checking of the serial numbers by Norbert Sickler of the North Dakota Crime Bureau of the property that was reported missing with the serial numbers of the property that was taken into custody by Sheriff Cornell, it was then learned that the seven (7) air tanks and oxygen resuscitator that were found in the defendant's pickup were the same and identical property.

"Following the preliminary examination, requested by the defendant, and after his being charged with the crime of theft of property, defendant made a motion to suppress evidence on the basis that the Sheriff in failing to obtain a search warrant to search the defendant's pickup actually conducted an unlawful search of the defendant's pickup truck with the confiscating of the property by the Sheriff being unlawful, which motion was denied, and it is from that order of the district court that the defendant takes his appeal.

"IT IS HEREBY FURTHER STIPULATED AND AGREED by and between the respective counsel hereto, the record on appeal shall consist of this stipulation of fact, transcript of preliminary hearing, depositions of Mike Baranko and of Sheriff Cornell, partial transcript of the district court, and all of the papers, records and documents filed in said case."[2]

---

2. The parties did not include a transcript of the proceedings at trial as part of the record. Rule 10(a), N.D.R.App.P., specifies that the "original papers and exhibits filed in the trial court, three copies of the transcript of proceedings, if any, and a certified copy of the docket entries prepared by the clerk of the trial court shall constitute the record on appeal in all cases." Subdivision (g) of Rule 10 provides that in lieu of the record on appeal as defined in subdivision (a), "the parties may prepare and sign a statement of the case showing how the issues presented by the appeal arose and were decided in the trial court and setting forth only so many of the facts averred and proved or sought to be proved as are essential to the decision of the issues presented." This subdivision further

provides that if the statement is approved by the trial court, it shall then be certified to the Supreme Court as the record on appeal. In this instance the statement was approved by the trial court. Although we recognize that the parties adhered to the procedure in Rule 10(g), we must also note that a complete transcript of the proceedings at trial is ordinarily necessary in appeals of this nature. In City of Wahpeton v. Skoog, 295 N.W.2d 313 (N.D.1980), we stated: "If we find the order denying the motion to suppress should be reversed, we must decide whether or not the error in admitting that evidence requires us to also reverse the judgment of conviction under Rule 52(a), N.D.R.Crim.P., and the Chapman rationale [Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705

The issues, as set forth by Klodt, are as follows:

"I.

"Does the defendant have standing under the Fourth and Fourteenth Amendments of the United States Constitution and Section 18 of Article I of the North Dakota Constitution to object to the use of certain items of personal property as evidence to convict him of a crime, where the items of personal property were taken by the County Sheriff from the defendant's pickup, mechanically inoperable, and left parked for three (3) days on private property in a rural area being used as a general store and postoffice?

"II.

"If it be determined the defendant has standing to challenge the legality of the search, can the reasonable expectation of privacy necessitate the officers obtaining a search warrant?

"III.

"Would the defendant's Voluntary Statement made [sic] stand if the search of the vehicle was illegal?"

### STANDING

The issue of Klodt's standing to bring a motion to suppress evidence is based on the premise that the evidence was obtained in violation of his rights under the Fourth Amendment to the United States Constitution and Section 18 of the North Dakota Constitution, both of which essentially provide the right of the people to be secure against unreasonable searches and seizures. These constitutional rights may be enforced by the exclusion of evidence. *State v. Fischer*, 270 N.W.2d 345 (N.D.1978). The United States Supreme Court in *Jones v. United States*, 362 U.S. 257, 80 S.Ct. 725, 4

L.Ed.2d 697 (1960), held that standing to enforce the exclusion of evidence obtained in violation of the Fourth Amendment could be based on three alternative grounds: (1) standing based upon an interest in the property seized; or (2) standing based upon a possessory or proprietary interest in the premises or a legitimate presence upon the premises at the time of the search; or (3) automatic standing to contest a seizure of goods where the offense charged is possessory and is based upon the possession of the seized goods. See: *State v. Fischer, supra*. In *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), the United States Supreme Court determined that the "legitimately on the premises" standard was too broad a gauge for measurement of Fourth Amendment rights. 439 U.S. at 142, 99 S.Ct. at 429, 58 L.Ed.2d at 400. In *United States v. Salvucci*, —— U.S. ——, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980), the United States Supreme Court overruled the automatic–standing rule of *Jones v. United States, supra*, and held that defendants charged with crimes of possession may claim the benefits of the exclusionary rule only if their own Fourth Amendment rights have, in fact, been violated, stating:

"As in *Rakas*, we again reject 'blind adherence' to the other underlying assumption in *Jones* that possession of the seized good is an acceptable measure of Fourth Amendment interests. As in *Rakas*, we find that the *Jones* standard 'creates too broad a gauge for measurement of Fourth Amendment rights' and that we must instead engage in a 'conscientious effort to apply the Fourth Amendment' by asking not merely whether the defendant had a possessory interest in the items seized, but whether he had an expectation of privacy in the area searched. Thus neither prosecutorial 'vice,' nor the underlying assumption in *Jones* that possession of a seized good is the equivalent of

(1967)]. There is no doubt that a transcript of the trial proceedings is necessary to accomplish our review." 295 N.W.2d at 316. Because of our disposition of the issue of the order denying the motion to suppress in this instance, we will

not require the preparation of a transcript of the proceedings at trial; but attorneys, for the defense and the State, should be aware that a transcript may be necessary in future cases for us to accomplish our review.

Fourth Amendment 'standing' to challenge the search, can save the automatic standing rule." —— U.S. at ——, 100 S.Ct. at 2553, 65 L.Ed.2d at 629.

Both the State and Klodt have argued the significance of these decisions at length. The State contends that Klodt has no standing to challenge the validity of the warrantless search because he had no legitimate possessory interest in the items taken. Interesting as the discussion is, we must keep in mind that Klodt was not charged with the crime of possession of stolen property, in which crime possession of the property would be an essential element, but rather he was charged with theft of property in violation of Section 12.1–23–02, N.D.C.C.,[3] in which possession of the property at the time of the warrantless search is not an element.[4] Secondly, although the State attempts to focus on the fact that Klodt has no possessory interest in the stolen property which is protected by the Fourth Amendment, it is not the search of the stolen property but rather the search of the pickup, which the State apparently concedes was owned by Klodt, which is at issue.

■ The United States Supreme Court has now held that while property ownership is a factor to be considered in determining whether or not an individual's Fourth Amendment rights have been violated, that does not end the inquiry. *Salvucci, supra; Rakas, supra.* The *Salvucci* and *Rakas* decisions indicate that an illegal search violates only the rights of those who have a legitimate expectation of privacy in the invaded place. Prior to the decisions in *Salvucci* and *Rakas*, this court, basing its holding on *Jones, supra,* indicated that standing could be established by a defendant who claimed a possessory or proprietary interest in the premises searched. *State v. Fischer, supra,* 270 N.W.2d at 350. We have previously

indicated that it is within our power to apply higher constitutional standards than are required of the States by the Federal Constitution. *State v. Matthews,* 216 N.W.2d 90 (N.D.1974). Although the United States Supreme Court has, for the most part, overruled *Jones,* upon which the decisions in *Matthews* and *Fischer* were based, we need not decide today whether we will adhere to our previous decisions in those cases or follow the rationale of the United States Supreme Court in *Salvucci* and *Rakas.* Whether we merely look at Klodt's ownership of the pickup as providing standing to challenge the validity of the warrantless search or merely consider Klodt's legitimate expectation of privacy in the pickup, or both, we conclude that Klodt has at least a threshold standing to raise the question of the validity of the search of the pickup.

## CONSTITUTIONALITY OF THE SEARCH

This court has previously delineated three basic premises in determining the constitutionality of a search:

1. All searches made without a valid search warrant are unreasonable unless they are shown to come within one of the exceptions to the rule that a search must be made upon a valid search warrant;

2. Where a violation of the Fourth Amendment provisions as to search and seizure is asserted, the burden of proof on a motion to suppress is on the State; and

3. Evidence obtained by search and seizure violative of the Fourth Amendment is, by virtue of the Due Process Clause of the Fourteenth Amendment, inadmissible in State courts. *State v. Matthews, supra,* 216 N.W.2d at 99.

In *Matthews* this court acknowledged several generally recognized exceptions to

---

**3.** Section 12.1–23–02, N.D.C.C., provides, in part:

"A person is guilty of theft if he:
"1. Knowingly takes or exercises unauthorized control over, or makes an unauthorized transfer of an interest in, the property of another with intent to deprive the owner thereof; . . ."

**4.** *But see State v. Bourbeau,* 250 N.W.2d 259 (N.D.1977), holding that the crime defined by Section 12.1–23–02, N.D.C.C., including knowingly retaining the property of another which has been stolen, with intent to deprive the owner thereof, is a single offense.

the requirement of a valid search warrant prior to search and seizure. One of those exceptions arises when the items of evidence or contraband are in "plain view" of officers legally in a position to see them. *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971).

■ If the taking of the items from the pickup did constitute a search and seizure, an examination of the testimony in this case immediately reveals that the "plain view" exception was applicable. The pickup was parked on private premises for several days without permission of the owner of the premises; the sheriff was requested by the owner of the premises where the pickup was parked to remove the pickup; the pickup was inoperative; and before moving the pickup the sheriff looked into the cab of the pickup with a flashlight and observed some small oxygen tanks, air sacks or air packs, and a face mask. Some other equipment was in the back of the pickup covered with greasy work clothes, but some of the masks and other equipment were visible because the wind had dislodged the clothes; at that time the sheriff had no knowledge that the items had been stolen; and the sheriff obtained the serial numbers of the air packs and called the State Crime Bureau agent in Bismarck who informed the sheriff that he should secure the items and take them so nobody would steal them. It was not until two days later that the Crime Bureau received a report of stolen property from McKenzie County and matched the serial numbers with the list of stolen property from McKenzie County with the serial numbers given the Crime Bureau by the sheriff.

It is apparent from these facts that the sheriff did not conduct an illegal search of Klodt's pickup. Klodt, however, argues that the sheriff could have obtained a search warrant to search the pickup. We reject that argument because the property was in plain view and was removed from the pickup for the purpose of securing the property from theft. There was no reason for the sheriff to obtain a search warrant under these circumstances. Klodt has also

argued that law-enforcement officers should not assume the added responsibility of "taking care" of somebody else's property because it would burden an already-overworked and underpaid segment of working people. We believe this argument is directly contrary to the philosophy of most law-enforcement officials to protect persons *and* their property. If the sheriff, at the request of the owner of the premises on which the pickup was parked, had taken the pickup into custody without securing the items in question, and had those items subsequently been removed by an unknown person, and had the owner of the pickup been the lawful owner of the items, the sheriff very probably may have been the subject of a civil suit for damages for failure to protect the owner's property after taking the vehicle into his custody.

In *State v. Stockert*, 245 N.W.2d 266 (N.D.1976), this court held that the search of the automobile, under the facts therein set forth, was not permissible under either Federal or State constitutional standards. In *Stockert* an attempted robbery had occurred. The police were called and, at daylight, they followed footprints from the scene of the attempted robbery to a grove of trees where they found a rifle, a pair of coveralls, and a ski-mask in the branches of an evergreen tree. The tracks then led to an automobile stuck in a large bank of snow. The driver's door was locked and the passenger doors were blocked with snow. One of the officers entered the automobile through an unlocked rear door on the driver's side and opened the glove compartment and removed, among other things, a driver's license. The license was offered and received in evidence at trial to identify Stockert as the person committing the attempted robbery. Holding that the evidence should properly have been suppressed, this court stated:

"The cases cited generally recognize that searches of vehicles may sometimes be made under circumstances where searches of buildings would not be allowed because of the ambulatory character of automobiles, the lesser expectation

of privacy as to automobiles, and the fact that automobiles are often brought within the plain view of officers. [Citations omitted.] Warrantless searches of automobiles are sometimes authorized when the automobiles are lawfully within the custody of the police, who have a duty to protect the vehicle from damage or theft and the right to protect themselves from the use of weapons which may be found within the vehicle. [Citations omitted.] However, none of these considerations apply in the case before us. The automobile in question was not in police custody. It was located on private property, not on a highway. It was stuck in snow, so it was not immediately movable.

"And there was ample time within which to obtain a warrant. There was a five–hour delay between the officers' arrival at the scene and the commencement of investigation at the scene. After the automobile was discovered and the driver's license was obtained, there was a delay of at least eight hours before the defendant was contacted, at about 3:30 in the afternoon.

. . . . .

"Specifically, a warrantless search of a glove compartment should be permissible and constitutionally reasonable if it were part of a standard operating policy of taking inventory of the contents of automobiles impounded or otherwise in lawful police custody where the policy is intended in good faith to secure or protect the car or its contents or to ensure the safety of its custodians." 245 N.W.2d at 269–270.

The court specifically noted that the officers admitted that they entered the car and the glove compartment to find evidence of the ownership of the car which they believed to have been used in the attempted robbery and thereby to identify a suspect.

A comparison of the facts in *Stockert* with the facts in the instant case immediately reveals the difference. Here, as in *Stockert*, the vehicle was inoperative and on private property, but, unlike *Stockert*, the owner of the premises on which the pickup was parked had specifically requested the sheriff to remove the vehicle from his property because it was blocking the driveway which was used by the vehicles delivering mail to the U. S. postoffice he operated at that location; the items taken by the sheriff were in plain view, not in a glove compartment; the sheriff was unaware that any crime had been committed; and the sheriff's actions were intended in good faith to secure and protect the items while the pickup was in the custody of the sheriff.

In *Coolidge v. New Hampshire, supra*, the United States Supreme Court, discussing the "plain view" doctrine, stated:

"Finally, the 'plain view' doctrine has been applied where a police officer is not searching for evidence against the accused, but nonetheless inadvertently comes across an incriminating object." 403 U.S. at 466, 91 S.Ct. at 2038, 29 L.Ed.2d at 583.

Section 39–26–04, N.D.C.C., permits units of government to take into custody and impound an abandoned motor vehicle. An "abandoned motor vehicle" is defined by Section 39–26–02(1), N.D.C.C., to include a motor vehicle that "has remained for a period of more than forty-eight hours on private property without consent of the person in control of such property . . ."

Under these circumstances, the sheriff, when called by the owner of the premises on which the pickup was parked for more than 48 hours without permission, had the authority to take the pickup into custody. In so doing he had the right to inventory the valuable items in the pickup, particularly those which were in plain view, without obtaining a search warrant. We conclude the taking of the items under these circumstances was permissible and constitutionally reasonable under both the Federal and State Constitutions.

As his last issue Klodt asserts that it is a general rule that confessions or voluntary statements admitting to an offense, elicited after a defendant has been confronted with incriminating evidence obtained during an illegal search, "are fruit of the poisonous

tree" and are not admissible into evidence. Because we have held that the evidence in this instance was not obtained during an illegal search, we need not consider this issue.

The judgment of conviction by the district court is affirmed.

ERICKSTAD, C. J., and PEDERSON, PAULSON and SAND, JJ., concur.